Wales v. Miner.

No. 10,254.

### WALES v. MINER.

CRIMINAL CONVERSATION.—*Seduction.*—*Pleading.*—A complaint for criminal conversation need not allege the means by which the seduction of the wife was effected, nor that she is still the plaintiff's wife, nor that the defendant knew her to be such.

SAME.—*Divorce.*—That the plaintiff and his wife were divorced before the suit was begun is no defence to a suit for criminal conversation.

SAME.—*Wife's Conduct.*—A wife is incapable of such consent to her own seduction as will bar the husband's right of action.

SAME.—*Excessive Damages.*—One thousand dollars will not, by the Supreme Court, be deemed excessive damages in a suit for criminal conversation, though the wife may have been somewhat easily led astray, if the result is to induce a divorce.

SAME.—*Evidence.*—*Statute of Limitations.*—In such case, evidence of guilt more than two years before bringing the suit, the statute of limitations being pleaded, may be given without first proving guilt within two years.

SAME.—*Exemplary Damages.*—*Instruction.*—Exemplary damages may be allowed in all suits by a husband for the seduction of his wife, and though it is inaccurate to instruct the jury that this can only be done where the acts of the wrong-doer are *wilful,* the defendant can not be injured by it.

PRACTICE.—*Exceptions.*—*Supreme Court.*—Where no exception has been taken to the overruling of a demurrer to a reply, no question as to the sufficiency of the reply can be made in the Supreme Court.

SAME.—*Evidence.*—Error in excluding evidence is cured by the subsequent introduction of the same evidence.

From the Union Circuit Court.

*B. F. Claypool, L. W. Florea* and *J. H. Claypool,* for appellant.

*J. W. Connaway* and *T. D. Evans,* for appellee.

FRANKLIN, C.—Appellee Miner sued appellant Wales for the seduction of appellee's wife. The suit was commenced October 28th, 1881. The complaint is in two paragraphs. Appellant moved to make each paragraph of the complaint more specific, which was overruled. He then demurred to each paragraph, which was also overruled. He then filed an answer in five paragraphs. A demurrer to the fourth paragraph was sustained, and a demurrer to the second, third and fifth was overruled.

A reply was filed in four paragraphs. A demurrer to the third and fourth paragraphs was sustained as to the third and overruled as to the fourth.

There was a trial by jury, verdict for appellee for $1,000, and, over a motion for a new trial, judgment was rendered upon the verdict. All of which rulings against appellant have been assigned as errors.

The first paragraph of the complaint avers that "Eglantine Miner was, on the 18th day of October, 1881, the lawful wife of the plaintiff, and had been for a long time previous thereto, and was at the time hereinafter mentioned; that the defendant contriving and wrongfully and maliciously intending to injure the plaintiff, and to deprive the plaintiff of the comfort, fellowship and assistance of his said wife, Eglantine Miner, and to alienate and destroy her affections for him, the defendant, on the 1st day of January, 1872, and on every day since, until the 18th day of October, 1881, at the county of Union, and State of Indiana, wrongfully and wickedly persuaded, seduced, debauched and carnally knew the said Eglantine Miner, the then wife of plaintiff, who was his said wife at, between and upon all the time between the said 1st day of January, 1872, and the 18th day of October, 1881 ; and thereby did seduce her affections, the said Eglantine Miner, and alienate from him, the said plaintiff, and that thereby her affections were then and there alienated and destroyed; and, also, by means of the premises, the plaintiff from that time to the said 18th day of October, 1881, has been wholly deprived of the comfort, fellowship, society, aid and assistance of the said Eglantine Miner, his then said wife, in his domestic affairs, which during all that time he ought and would otherwise have had, to his damage $15,000, for which sum he sues and demands judgment, and for general relief."

The second paragraph is the same, with the additional allegations, that the defendant well knew that the said Eglantine was the wife of the plaintiff, and dates the commencement of the seduction on the 1st day of January, 1874.

The objection to these paragraphs of the complaint is that they do not state the means by which the alleged seduction was accomplished. In support thereof we have been referred to the following authorities: 1 Chitty Pl. 232; *Rees* v. *Cupp,* 59 Ind. 566; *Smith* v. *Yaryan,* 69 Ind. 445 (35 Am. R. 232); *Bell* v. *Rinker,* 29 Ind. 267; *Johnson* v. *Holliday,* 79 Ind. 151.

In the last case named no question was made upon the pleadings, and it does not apply here.

In the case in 29 Ind., *supra,* it was only held that it was not necessary to aver in the complaint the previous chastity of the plaintiff, and we can not see that that sustains appellant's views in this case.

In the case in 69th Ind., *supra,* the objection to the complaint is not stated; some of the means are set out; the complaint was held good, but it was not decided that the complaint would have been bad if the means had not been stated.

In the case in 59th Ind., *supra,* it was held that a complaint was good on demurrer without alleging the means by which the seduction was accomplished. And BIDDLE, C. J., in rendering the opinion, adds: " Perhaps it might have been made more certain on motion, but as no motion for that purpose was made, we must hold the complaint good." This is a mere doubtful dictum of the learned judge who rendered the opinion, which, if it could be made applicable where a woman brings an action for her own seduction, as in that case, can not apply where the husband brings an action for the seduction of his wife; in such a case he is not presumed to know the means used, especially as in this case, where the wife then was and still remained in the confidence of the defendant.

In 1 Chitty's Pl., p. 232, we find nothing applicable to the question. But in 2 Chitty's Pl., p. 668, we find a form and precedent of a complaint for debauching a daughter and servant, which is in accordance with the complaint in question, and which does not state any of the means used in accomplishing the seduction. Both paragraphs of the complaint allege that the defendant persuaded, seduced, debauched and

carnally knew appellee's wife. This, we think, is a sufficient specification of facts, without alleging the proof necessary to sustain them. It is further objected, that the complaint does not show that said Eglantine was the wife of plaintiff when the suit was commenced.

The fact that a divorce may have been granted to the plaintiff a few days before the bringing of the suit would not destroy the appellee's right of action; that might be the means of perfecting it.

If the said Eglantine had died before the commencement of the suit, under section 281 of the R. S. of 1881, the action would have survived to the husband; and if she was only civilly dead as to the husband, being divorced and in a more humiliating condition to him than actual death, that would not destroy the right of action.

The action is brought for the injury and destruction of plaintiff's marital relations, and is not based upon their then existence. The complaint is not bad because it did not aver that she was his wife when the suit was commenced.

It is further objected that the first paragraph of the complaint does not aver that when the alleged seduction occurred appellant knew she was the wife of appellee. When a man engages in the practice of illicit intercourse with a woman, he is bound to take notice of her domestic relations, and he takes the hazard of being held responsible for any injuries that may result. We know of no case in which it has been held that before the action will lie the guilty party must be charged in the complaint with having, at the time of the seduction, actual notice or knowledge of the domestic relations of the seduced. The first paragraph of the complaint is not bad for not averring that at the time of the alleged seduction appellant knew that said Eglantine was the wife of the appellee.

The complaint might have been made more specific in relation to the injuries and damages, by alleging as the result of the seduction, the separation, her abandonment of the plaintiff, her suit for a divorce, and the decreeing of the di-

vorce to appellee, thereby finally destroying the marital relations between them. But we think each paragraph stated facts sufficient, and was specific enough to withstand the motions and demurrers; there was no error in overruling them.

The next error complained of is the sustaining of the demurrer to the fourth paragraph of appellant's answer. This paragraph alleged that at the time of the commencement of the suit the said Eglantine was not the wife of the plaintiff. For the reasons heretofore given there was no error in sustaining the demurrer to this paragraph of the answer.

It is next insisted that the court erred in overruling the demurrer to the fourth paragraph of the reply. This paragraph was in reply to a paragraph in the answer pleading the statute of limitations, and averred concealment of the seduction and acts of adultery from the plaintiff until within two years prior to the bringing of the suit. The record shows that the demurrer was filed and overruled, but does not show that appellant made any objection or took any exception to the overruling of it, and no question is presented to this court on the ruling upon the demurrer; the paragraph in the reply stands the same as though no demurrer had been filed to it. But it is insisted by appellant that an objection to a reply, that it does not state facts sufficient, like the same objection to a complaint, may be raised for the first time in this court, and he has so made a specification in his assignment of errors.

Section 343 of R. S. 1881 only applies to demurrers to complaints. Appellant admits that a failure to demur or take an exception to the overruling of a demurrer to an answer waives any objection as to its sufficiency. We think the same rule applies to replies; and what can not be taken advantage of in the introduction of the testimony can not be made available in this court by an objection to the sufficiency of the allegations of the reply. If, however, the statements in the pleadings show that a party is entitled to judgment, he has his remedy by a motion for judgment on the

pleadings, notwithstanding the verdict. This specification of errors presents no question for the consideration of this court.

The overruling of the motion for a new trial is next presented. The first four reasons call in question the sufficiency of the evidence to sustain the verdict. The evidence is long and in some respects very contradictory. We have examined it carefully, but think it unprofitable to give extracts in relation to instances of intimacy between appellant and appellee's wife. The following general facts are satisfactorily established:

Appellee and his wife were married in 1850; they lived on a farm a little distance from the town of Liberty, in said county; appellant was a single man living in the same neighborhood; in 1873 and 1874 he boarded and lodged with appellee, at his house, for several months; he then quit boarding there, but did not leave the neighborhood; in 1875 he again went to board with appellee, and remained in such capacity until about the 1st of October, 1876, when appellee became suspicious of an undue intimacy between appellant and his wife, and refused to longer board appellant; appellant then boarded a short time at a hotel in Liberty, and then went to live with his mother, within a quarter of a mile of where appellee lived; appellee's wife objected to the discharge of appellant as a boarder, and the disturbance between appellee and his wife on account of appellant continued to grow worse until in May, 1877, when she abandoned her husband; they had two sons that were grown; she went to live with one of them in a house in the neighborhood, and in a short time the son hired to work for appellant, and an arrangement was made for her to move into the house of appellant, keep the house and board appellant; they continued to live together in that way until her son got married, in the fall of 1881, when she left appellant's house and commenced a suit against appellee for a divorce; the divorce was decreed to appellee on the 19th day of October, 1881; this suit was commenced on the 28th day of October, 1881, and within a week after the suit was commenced she and appellant were married.

The proof shows that a strong attachment had grown up between appellant and appellee's wife from the first time he went to appellee's house to board; when he was not boarding there his frequent visits to appellee's house, when appellee's wife was alone, and the many instances of improper conduct between them when they were frequently together, absent from appellee's house, as testified to by appellee's witnesses, if believed by the jury, were amply sufficient to justify the jury in coming to the conclusion that she had been seduced by appellant, and that they were guilty of continuous adultery on various occasions, from the year 1873 until Christmas, in 1879. No acts of improper conduct, other than their so living in the same house together, were proved to have taken place from December 25th, 1879, until the divorce was granted; but from their manner of dwelling, and the intimacy that existed between them, it is fair to presume that they continued their former customs of life.

It is further insisted that all the right of action in the plaintiff, which the evidence tends to prove, is barred by the statute of limitations. The act proved, of December, 1879, was not within the statute of limitations, and the evidence shows that prior to two years immediately preceding the commencement of this action, while appellee, after July, 1876, had his suspicions of the guilt of his wife and appellant, on account of their general intimacy, he knew no facts upon which to act until within two years before the bringing of this suit. These acts, so far as convenient, would naturally be kept by appellant from the knowledge of appellee, and the proof shows that upon one occasion he requested the witness not to tell that he had met appellee's wife at Centreville on the occasion of the county fair there.

We think the evidence does not show that the action was barred by the statute of limitations, and that it does tend strongly to sustain the verdict of the jury.

In connection with the evidence, it is further claimed as a reason for a new trial, that the damages are excessive, be-

cause appellant may have been seduced by the wife, and not the wife by appellant.

The wife may not have been without fault; and while her contributions to guilt, if any, might perhaps be considered in mitigation of damages, though this we do not decide, they could not relieve the appellant from liability. As against the rights of the husband, the wife is incapable of consenting to her seduction. But observation has demonstrated that absolute perfection in men and total depravity in women are not the general rule, and we can not presume, in the absence of proof, that the wife alone was guilty, and appellant innocent. We see nothing in the evidence in this case to justify the conclusion that the wife seduced appellant. And when we take into consideration the general circumstances surrounding this case, that appellee, in his advanced years has been deprived of the society, affections and assistance of his wife, his name dishonored and his family disgraced, his mental anguish, pain and vexation, his peaceful home broken up, and all his marital relations overthrown by the destroyer of his wife's virtue, we think that a very low estimate or limit should not be placed upon the amount of damages that should be awarded by a jury in such a case.

We see nothing in the evidence to justify a disturbance of the verdict of the jury or the judgment of the court, on account of excessive damages.

It is further claimed, as a reason for a new trial, that the court erred in permitting the plaintiff to prove acts tending to show adultery between his wife and appellant that occurred more than two years before the bringing of the suit, without having first proved some such act within the two years.

Under the direction of the court, the plaintiff had the right to control the order of his testimony. And whether he failed to establish by a preponderance of the evidence, that the facts so proved were not barred by the statute of limitations, was for the jury to decide, and not the court. This is not like a case of conspiracy, where the conspiracy must be first proved

before the declarations of any of the conspirators could be proved against any others.

There was no error in thus admitting the testimony.

Appellant further insists that the court erred in refusing to permit him to prove by appellee, while on the witness stand, that at the time appellee discharged appellant from boarding at his house, he " suspicioned" or " believed " that appellant and appellee's wife were guilty of adultery. Whether this ruling was right or wrong makes but little difference; if wrong, it was afterwards cured by the introduction in evidence, by agreement, of the deposition of appellee, by which it was shown that at the time referred to, from the general intimacy of appellant and appellee's wife, he suspected that there was something wrong, but knew no facts to base more than a suspicion upon.

There was no available error in this ruling of the court.

The fifteenth reason for a new trial calls in question the correctness of the instructions given by the court to the jury, and a part of the second instruction is complained of, which instruction reads as follows: " To entitle the plaintiff to recover, he must prove by a fair preponderance of all the evidence, that Eglantine Miner was his wife ; that while she was his wife the defendant debauched and seduced her, as averred in the complaint. And if the jury find from a fair preponderance of the evidence, that the defendant did debauch or seduce the plaintiff's wife, and the defendant has sustained any damage thereby, and such things were done without the connivance or collusion of the plaintiff, then the plaintiff would be entitled to recover, and the amount of such recovery will be the amount of damages shown by the evidence, if any is shown, to which you may add such reasonable amount for exemplary damages as you think the evidence justifies, but such seduction must have been within two years before the 28th day of October, 1881, unless the defendant concealed the same from the knowledge of the plaintiff by some affirmative act."

The objection urged against the instruction is that the court

instructed the jury that they might add such exemplary damages as they thought the evidence justifies, without stating to them any reasons for adding exemplary damages.

We think the instruction contains a correct statement of the law, as applicable to the facts, and, so far as it goes, as favorable to defendant as he had a right to ask. If he desired a further instruction as to when exemplary damages might be added, he had a right to ask such to be given; having failed to do so, he must abide by the instruction as given.

The seventh instruction is complained of. It reads as follows: "Should you find for the plaintiff, the measure of damages will be the amount of actual damages sustained by reason of the plaintiff's being deprived of the society, services, comfort and company of his wife, if he was so deprived of any of them, and the distress and anxiety of mind occasioned thereby, in such amount as you may think from all the evidence the plaintiff is entitled, to compensate him for such matters, to which you may add such amount of exemplary or punitive damages as you think right."

The same objection is urged against this as against the second. It was unnecessary for the court to instruct the jury in relation to what kind of cases exemplary damages are applicable. The action of seduction is not like ordinary actions for tort; in this action, in all cases of guilt, exemplary damages may be allowed. It is in the nature of a fraud upon the injured party. Sedgwick Damages, side p. 542.

The sixth instruction is also complained of, on account of containing the following definition of exemplary damages: "Punitive or exemplary damages are such as the jury in their discretion may assess in addition to actual damages, as a punishment or earnest money, if the act or acts of the wrong-doer were *wilful*."

The use of the word *wilful* is objected to.

The last clause constitutes no part of the definition of the phrase "exemplary damages." It only declares when such damages are applicable; and, as we have stated, in this respect, the

rule in ordinary actions of tort does not apply to actions for seduction ; if erroneous, it could do appellant no harm. But the word *wilful* frequently means more than mere intention, as insisted upon by appellant. It sometimes is used to mean *perverse*, deliberate design, and malice, and when used in such senses would not be erroneous in actions for ordinary torts. Although it might have been better to have used words of a more definite meaning, we do not think that the use of the word *wilful* had a tendency to mislead the jury to the injury of appellant.

" The record of the whole case shows that the judgment was right on its merits, and in such cases a judgment will not be reversed for harmless intermediate errors." *Toler* v. *Keiher*, 81 Ind. 383, and authorities therein cited.

There was no available error in overruling the motion for a new trial.

The judgment ought to be affirmed.

PER CURIAM.—It is therefore ordered, upon the foregoing opinion, that the judgment of the court below be and it is in all things affirmed, with costs.