LEE, Respondent, vs. HAMMOND, Appellant.

*February 18—June 19, 1902.*

*Criminal conversation: Evidence: Death of wife: Instructions to jury: Damages: Connivance of husband: Arguments to jury: Appeal: Exceptions.*

1. In an action for criminal conversation with plaintiff's wife, evidence that, after the alleged adultery and prior to the commencement of the action, he had obtained a divorce from her, was admissible.
2. In such action it was not error to permit plaintiff to prove the death of his wife.
3. Plaintiff having offered to prove that after the divorce his wife came to her death by suicide, an objection was sustained and the jury were directed to disregard the statements of counsel as to the offer. *Held,* that there was no error prejudicial to defendant.
4. An exception to the whole charge to the jury on the ground that it assumes the existence of facts in dispute, without specifying any particulars, is too general to receive consideration.
5. The court having charged the jury that if they found defendant had not been guilty of the wrong complained of that would end their consideration of the case and they should return a ver-

dict in his favor, and that they should not find for the plaintiff unless they were convinced from all the evidence of the defendant's guilt to a reasonable certainty, a further charge on the subject of damages, preceded by language to the effect that if they found from the evidence that defendant had committed the wrong then they should consider and determine the amount of damages, etc.—is *held* not to have been erroneous as assuming that defendant was guilty.

6. It is not error to refuse to give an instruction which is given in the general charge.

7. A husband is not chargeable with connivance or consent merely because, after having reason to suspect his wife of infidelity, he vigilantly seeks proof of her unchastity, leaving open the opportunities already existing, but not making new ones or inviting the wrong.

8. Defendant in an action for criminal conversation having called for the production of all letters purporting or claimed to have been written by him to plaintiff's wife, and having denied that he wrote the letters produced, afterwards testified that he supposed there were some such letters. From this admission plaintiff's counsel argued to the jury that defendant knew all the time that he had written the letters. *Held*, that this was in the line of legitimate argument.

9. Statements of counsel in the argument to the jury in an exciting trial, resulting apparently from an honest misunderstanding of the opening statement by the opposing counsel and of the evidence, are *held* not to constitute in this case a material error.

10. In an action for criminal conversation it appeared that plaintiff had obtained a divorce from his wife and that she had afterwards died, and there was some claim that she had committed suicide. In the argument to the jury defendant had stated that plaintiff had sent her to her grave; that he wanted to get rid of her, that he might feed on new pastures; and that plaintiff was a blackmailer, a cuckold, a procurer, and was making merchandise of his wife's dishonor. Plaintiff's counsel in closing said defendant was a seducer and murderer. The court sustained an objection, saying there was no evidence upon which the statement that defendant was a murderer could be based. *Held*, that there was no error prejudicial to defendant. Dodge, J., dissents, being of the opinion that the conduct of plaintiff's counsel in impressing upon the jury by questions the fact that plaintiff's wife had committed suicide, and then asserting that defendant was a murderer, was improper and prejudicial, in view of the large verdict, including punitory damages.

APPEAL from a judgment of the circuit court for Chippewa county: A. J. VINJE, Circuit Judge. *Affirmed.*

The cause was submitted for the appellant on the briefs of *Frawley, Bundy & Wilcox,* and for the respondent on that of *Wickham & Farr.*

CASSODAY, C. J. This action was commenced November 23, 1899, to recover damages for criminal conversation with the plaintiff's wife, alleged to have been committed at Eau Claire at divers times between September 15, 1899, and November 18, 1899. The complaint alleges the marriage of the plaintiff to Jennie E. Smith, March 8, 1891, and that from the time of such marriage to the time of committing the acts complained of they lived happily together as husband and wife; that between the dates mentioned the defendant wickedly and maliciously seduced, debauched, and criminally knew the plaintiff's wife, Jennie E., and thereby deprived the plaintiff of her affections, society, and assistance, to his great distress of body and mind and damage. The answer admits the marriage, and that the plaintiff and his wife had lived together as husband and wife, but otherwise denies each and every allegation of the complaint. At the close of the trial the jury returned a verdict in favor of the plaintiff, and assessed his compensatory damages at $6,000, and found that the plaintiff was entitled to recover $4,000 for punitory damages. In pursuance of an order of the court, judgment was entered thereon in favor of the plaintiff for $10,000 damages, and costs as taxed. From that judgment the defendant appeals.

The evidence on the part of the plaintiff tends to prove that his wife was twenty-seven years of age at the time of the trouble in question; that he was ten years older; that they had lived together happily as husband and wife for eight years; that in the winter of 1898–99, the plaintiff visited his old home in Maine for a couple of months; that during that time an intimacy sprung up between his wife and the defendant,

which continued down to the time of the trouble mentioned; that September 1, 1899, the plaintiff became suspicious that his wife's conduct with the defendant was not such as it should have been; that about November 9, 1899, he found three letters in an envelope on his wife's dresser in their sleeping room, dated, respectively, October 4, 1899, October 27, 1899, and November 7, 1899, which letters he knew to be in the handwriting of the defendant, with which he was familiar; that two of the letters were signed "Mrs. B.," and the other "Mrs. Brown," from which he became convinced that she had been guilty of criminal intercourse with the defendant; that he concealed his suspicion and conviction in order to obtain evidence of the fact; that November 18, 1899, after 8 o'clock in the evening, and after the light had been put out in the defendant's office, the plaintiff saw his wife go to the defendant's office, where the defendant was at the time, and, after remaining there for a while, she came away; that, soon after, he met his wife on the street, and informed her that he would not be at home that night, and he never lived with her afterwards; that November 22, 1899, he commenced an action for a divorce, and a judgment was entered therein on default in December, 1899; that March 24, 1900, the plaintiff's wife, Jennie E., died at Daytona, in the state of Florida, and her body was brought to Eau Claire and buried.

In admitting and excluding evidence in such a case, regard is always to be had to the nature of the action. As stated by a standard text-book, to recover it is essential for the plaintiff to prove the fact of marriage and the fact of adultery.

"The essential injury to the husband consists in the defilement of the marriage bed. The loss of the *consortium* is presumed, although the wife may have herself been the seducer, or may not have been living with the husband." 8 Am. & Eng. Ency. of Law (2d ed.) 268.

The same work declares that: "The right of the husband to recover is not affected, *except in the matter of damages,*

whether the intercourse be accomplished with the consent of the wife or forcibly against her will." *Id.* 262. Of course, the compensatory damages must necessarily be governed by the value of such loss of *consortium*. Hence the terms upon which the husband and wife lived together previous to the alleged adultery, their relations to each other, her chastity, character, and conduct, her condition of health, are proper subjects of inquiry on the question of damages. *Id.* 270–272.

1. Error is assigned because the court admitted testimony that the plaintiff had procured a divorce from his wife. The evidence to that effect seems to have been given without any objection. The plaintiff, having testified that he did not live with his wife after the occurrence of November 18, 1899, was asked this question: "Did you get a divorce from her after that?" Counsel for the defendant at first objected, but before the court ruled on the question he withdrew his objection, and the plaintiff answered in the affirmative, and then continued, without objection, by saying that, "I got the divorce on the ground of adultery with *E. S. Hammond.*" In reply, counsel refer to the fact that during the opening of the plaintiff's counsel to the jury, the court had ruled, against objection, that it was proper for him to state that the plaintiff had "applied for and obtained a divorce from his wife." Assuming that timely objection and exception was taken, the question recurs whether it was error to admit such testimony. Counsel cites no authority in support of his contention. The admissibility of such evidence seems to be unquestioned, and is generally assumed. Thus it is held that "an action of this kind may be maintained by the husband after a decree of divorce procured by the wife upon a cause of action accruing before the divorce was procured." *Wood v. Mathews,* 47 Iowa, 409. To the same effect: *Michael v. Dunkle,* 84 Ind. 544; *Wales v. Miner,* 89 Ind. 118; *Johnson v. Allen,* 100 N. C. 131, 5 S. E. 666; *Prettyman v. Williamson,* 1 Pennewill,

224, 39 Atl. 731; *Beach v. Brown,* 20 Wash. 266, 55 Pac. 46, 43 L. R. A. 114.

In one of the cases cited the criminal intercourse with the wife was accomplished after her separation from her husband. In another it was held that the complaint for criminal conversation need not allege the means by which the seduction of the wife was effected, nor that she was still the plaintiff's wife, nor that the defendant knew her to be such. In some of the cases it is held that the divorce might be considered in mitigation of damages. In some cases it is held that after a divorce the wife is a competent witness for the husband to prove the charge of adultery. *Ratcliff v. Wales,* 1 Hill, 63; *Wottrich v. Freeman,* 71 N. Y. 601; *Dickerman v. Graves,* 6 Cush. 308. This is in harmony with the ruling of this court. *Bigelow v. Sickles,* 75 Wis. 427, 44 N. W. 761; *Brown v. Johnson,* 101 Wis. 663, 77 N. W. 900. But that where there is no divorce she is incompetent as a witness to prove the criminal intercourse. *Carpenter v. White,* 46 Barb. 291. Under these authorities the wife would have been a competent witness had she been living. We must hold that such evidence is admissible, and that the remark of counsel that he would prove the fact was permissible.

2. The plaintiff proved by his wife's older sister, without objection, that his wife was twenty-seven years of age when she died. No motion was made to strike out such evidence. Error is assigned because the court then allowed the plaintiff to prove, against objection, that she died March 24, 1900, at Daytona, Florida, and that her body was brought to Eau Claire and buried. There seem to be very few adjudications directly upon the question. Counsel for the defendant cites no authority in support of his contention. Counsel for the plaintiff cite one case in which it was held that:

"Where a defendant has debauched the wife of the plaintiff, the right of action of the latter is complete, and a recovery by him is not defeated by her death before action brought." *Yundt v. Hartrunft,* 41 Ill. 9.

In an English case, more directly in point, it was held, nearly seventy years ago, that:

"If in an action for adultery it appear that the wife has died since the commencement of the action, the jury should give damages for the loss of the society of the wife from the time of the discovery of the adultery to the time of the wife's death, and also for the shock to the feelings of the husband; and this is so though it appear that there was no suspicion of the wife's infidelity till she was on her deathbed, and though the husband continued to treat her kindly up to the time of her death." *Wilton v. Webster,* 7 Car. & P. 198, 32 E. C. L. 491.

In that case the wife was in the last stage of consumption. On December 4, 1833, she "made a declaration of her guilt to her husband, which was afterwards confirmed by a declaration of the defendant himself," who had been her attending physician. She died twenty days after her confession. It was conceded in that case that the plaintiff was entitled to a verdict, and that the only question was as to the amount of the damages. Such proof of death naturally tended to limit and cut down the damages sustained. We do not find that this English case has ever been criticised or questioned. The admission of such evidence in the case at bar simply went to the question of damages. It might tend to diminish the damages, but not to increase them. Certainly, the admission of such testimony could not prejudice the defendant. Besides, as the wife would have been a competent witness had she been living, it was permissible, as held by some courts, to account for her absence as a witness by showing that she was dead. *People v. Hovey,* 92 N. Y. 554, 559; *Carpenter v. Pennsylvania R. Co.* (Sup.) 43 N. Y. Supp. 203; *Hall v. Austin,* 73 Minn. 134, 75 N. W. 1121.

3. Error is assigned because there was an offer to prove by the plaintiff that after the divorce his wife, Mrs. Lee, came to her death by suicide. Objection being made, and after

being interrogated by the court, the plaintiff's counsel said: "There is probably nothing that I could prove by this witness that I could not prove by other witnesses. We could prove only by this witness the fact that he saw the body and marks on the body. *Court:* The objection to the offer is sustained, and the jury will disregard the statements of counsel as to what he offered to prove." We perceive no prejudicial error in such ruling. The same is true in respect to the exclusion of two letters identified as having been written to the plaintiff by his wife.

4. There are twenty-three exceptions to the charge. One of them is to the charge as a whole, for the reason that it assumes the existence of facts in dispute, but without specifying any particulars. Such exception is not entitled to consideration. Several portions of the charge to which such exceptions are taken are favorable to the defendant. The brief of counsel for the plaintiff, after referring to the twenty-three exceptions in the printed case, simply states that the portion of the charge contained in eight of those exceptions mentioned "is erroneous in that it was repeatedly assumed by the court that the defendant was guilty of the wrong complained of, and it was only left to the jury to fix the damages." The portion of the charge thus referred to relates wholly to the subject of damages, and is preceded by this language: "If you find from the evidence that the defendant carnally knew and debauched plaintiff's wife without the aid or procurement of plaintiff, then you will consider and determine the amount of damages to be assessed against the defendant." The court had also previously charged the jury that, if they found that the defendant did not debauch and carnally know the plaintiff's wife, then that would end their consideration of the case, and they would return a verdict of no cause of action in favor of the defendant; and that they should not find for the plaintiff unless they were convinced from all the evidence of the defendant's guilt to a reasonable certainty. Compensatory

and punitory damages are then discussed, mostly in the abstract, and on the theory that there could be no damages unless the jury should find the defendant to be guilty; that compensatory damages must be limited to the loss which the plaintiff had "suffered, and without any regard to the defendant's ability to pay;" that punitory damages could only be assessed in case they believed that the defendant's conduct and the public good required it "as a punishment to the defendant in order to deter him and others" who might "be the like inclined from the commission of similar offenses;" and that, if they deemed it proper to assess such punitory damages, then they might "take into consideration the financial condition of the defendant." We perceive no reversible error in the charge of the court. 8 Am. & Eng. Ency. of Law (2d ed.) 266; *Matheis v. Mazet*, 164 Pa. St. 580, 30 Atl. 434.

5. Error is assigned for refusing to charge the jury as requested. The first instruction requested was to the effect that, if the jury found from the evidence that the plaintiff "knew that his wife was about to meet the defendant for the purpose of having criminal intercourse with him, and by words or acts encouraged her to do so," then they could "award him no damages on account of the commission of the act so encouraged by him." That instruction was given in the general charge. Error is assigned because the court refused to instruct the jury that: "If you find from the evidence that the defendant did have sexual intercourse with the plaintiff's wife, and also find that prior to such intercourse the plaintiff had reason to know his wife was guilty of improper conduct with the defendant, suspected her of it, and yet took no means to prevent an intercourse between them, you may consider such omission on his part in determining what, if any, damage he is entitled to recover from the defendant for seducing his wife." The law seems to be well settled that the husband cannot "be charged with connivance or consent merely because he was negligent in respect to his wife's conduct, and so per-

mitted opportunities for crime when he had no suspicion of
her infidelity." "Even when he suspects her, he may, in order
to obtain proof of her unchastity, leave open the opportunities·
which he finds, so long as he does not make new ones, or in-
vite the wrong." 8 Am. & Eng. Ency. of Law (2d ed.) 264.
"To constitute a defense to such an action the acts of plaintiff
must have been such as to warrant the conclusion that he as-
sented to the wife's infidelity." *Stumm v. Hummel,* 39 Iowa,
478. So it has been held in Massachusetts that: "A husband
who does nothing to encourage his wife to commit adultery,
and does not, directly or indirectly, throw opportunities there-
for in her way, but who, suspecting her thereof, watches her,
and suffers her to avail herself of an opportunity which she
had already arranged for without any knowledge on his part,
is not guilty of connivance, even if in so doing he hopes to
obtain proof which will entitle him to a divorce, and pur-
posely refrains from warning her for that reason." *Wilson v.
Wilson,* 154 Mass. 194, 28 N. E. 167. A quite similar ruling
was made in Iowa, where it was held that: "A husband is
not chargeable with collusion in allowing another to have
criminal conversation with his wife from the fact that, after
having his suspicions aroused, he, for the purpose of watching
her, leaves open existing opportunities, where he does not
create new ones or invite the wrong." *Puth v. Zimbleman,*
99 Iowa, 641, 68 N. W. 895. In that state it has been held
that, to be available, the plaintiff's consent and connivance
must be specially pleaded. *Morning v. Long,* 109 Iowa, 288,
80 N. W. 390. There is no evidence in the case at bar tend-
ing to prove consent or connivance on the part of the plaintiff.
All he did after his suspicions were aroused by the discovery
of the defendant's letters, apparently, was to vigilantly seek
proof of his wife's unchastity. The refusal to give the in-
struction quoted was not error.

6. Error is assigned for permitting the plaintiff's counsel,
in opening the case to the jury, to make improper statements.

and in refusing to rule on the defendant's objections thereto. The plaintiff and defendant had each been examined before the trial under sec. 4096, Stats. 1898. The alleged improper remarks so attributed to counsel consisted in stating that the plaintiff had obtained a divorce from his wife, and that she went to Florida and died, and that he had the body brought back for burial. Counsel for the plaintiff cites cases to the effect that the rule is less strict with regard to opening statements as to what the party proposes to prove, than as to what he claims that he has proved. *Campbell v. Kalamazoo,* 80 Mich. 655, 45 N. W. 652; *Walsh v. People,* 88 N. Y. 458. But it is unnecessary to discuss the question. What has already been said as to the admissibility of evidence on those subjects sufficiently disposes of the objections to such remarks.

7. Error is assigned for permitting the plaintiff's counsel to make improper remarks in his opening argument to the jury and refusing to rule on the defendant's objections thereto. One of such remarks complained of consisted in stating, in effect, that the defendant had, by a subpœna, called for the production of "all letters or copies of letters or writings purporting to have been written or by" the plaintiff "claimed to have been written by *E. S. Hammond* to Jennie S. Lee," and then, after the production of the three letters mentioned in the statement of facts, the defendant testified that he supposed there were some such letters, after having denied that he wrote the three letters to the plaintiff's wife so mentioned in the statement of facts; and from such admission it was argued that the defendant knew all the time that he had written the letters. The remarks, as well as the defendant's testimony, upon which the same were largely based, are too voluminous to be given here; but we think they were in the line of legitimate argument, and the exception to them must be overruled.

8. Error is assigned because in the closing argument on the part of the plaintiff it was stated that Mrs. G., whose dep-

osition was in evidence, was the keeper of a house of assignation. On being told by the court that there was nothing of that kind in evidence, counsel remarked that in the opening statement of defendant's counsel he told the jury that he would prove that Mrs. G. was the keeper of a house of assignation. Counsel for the plaintiff then made this statement:

"Now, gentlemen of the jury, I don't wish to put any false construction upon the evidence. I believed that when he made this statement that she was in a house of assignation, and when he produced the deposition to prove that she was in that house I believed it was the house of assignation he referred to."

The court then further corrected him by saying, in effect, that the statement of defendant's counsel was that on the night of September 29, 1899, the plaintiff's wife was in a house of assignation, and that the testimony was that she was in Mrs. G.'s house in 1893. The trial was manifestly exciting, and the feeling intense. There was apparently an honest misunderstanding of the statements made and the evidence. But we fail to find in the circumstance any reversible error.

9. Exception is taken because in the closing argument on the part of the plaintiff counsel said, "*Hammond* is a seducer and murderer." The defendant objected "to the statement of counsel that the defendant is a murderer." The court observed: "The objection is sustained. There is no evidence upon which any such statement can be based." The defendant then requested the court to further rule that such remark "was a breach of propriety on the part of counsel," whereupon the trial judge observed, "The court has already ruled." The evidence was undisputed that Mrs. Lee died in Florida while the defendant was in Eau Claire. There was some claim from the appearance of her body, when it reached Eau Claire, that she died by her own hand; but there was no pretense that the defendant killed her. Under the circumstances the most counsel could reasonably have meant

was that the defendant had destroyed her home, her reputation, and her happiness, which finally resulted in her death. It was a sort of response to the argument of defendant's counsel, who "stated to the jury that the plaintiff, *Lee,* had sent Mrs. Lee to her grave; that *Lee* wanted to get rid of Mrs. Lee, that he might feed on new pastures;" and "stated several times that *Lee* was a blackmailer, that he was a cuckold, that he was a procurer, that he was making merchandise of his wife's dishonor." The question has caused more hesitation than any other in the case, for fear that the remark may have increased the amount of punitory damages. But in the view of all the circumstances in the case we have reached the conclusion that the jury could not have been misled or prejudiced by the remark, and that the damages are not excessive. We find no reversible error in the record.

*By the Court.*—The judgment of the circuit court is affirmed.

DODGE, J. I find myself unable to concur in a judgment of affirmance, because I cannot persuade myself to palliate, excuse, or believe unprejudicial the conduct of the plaintiff's attorneys in first impressing upon the jury by questions the fact that plaintiff's wife had, after the divorce between them, committed suicide, and then in vehemently asserting to the jury in closing argument that defendant was a murderer. It seems to me that nothing could have been more likely to inflame the prejudices, and at least improperly rouse indignation and enhance damages, than such conduct as this. The court correctly ruled that after the divorce between plaintiff and his wife her life or death was not a material consideration, and yet to the nonlegal minds of the jury it could not but have been cogent at least to awaken indignation, and, as I think, effective in bringing about this very large verdict