## WOLDSON v. LARSON.

(Circuit Court of Appeals, Ninth Circuit.    October 5, 1908.)

No. 1,544.

1. COURTS (§ 372*)—FEDERAL COURTS—FOLLOWING STATE DECISIONS.
    The question of the measure of damages recoverable in an action of tort, where not governed by the state Constitution or statutes, is one of general jurisprudence, upon which state decisions are not controlling on the federal courts.
    [Ed. Note.—For other cases, see Courts, Cent. Dig. § 979; Dec. Dig. § 372.*
    State laws as rules of decision in federal courts, see notes to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

2. HUSBAND AND WIFE (§ 334*)—ACTIONS OF TORT—EXEMPLARY DAMAGES.
    It is a settled rule of the common law as administered by the federal courts that in an action for a tort, such as the alienation of the affections of the plaintiff's wife, exemplary damages are recoverable.
    [Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 1125; Dec. Dig. § 334.*]

3. HUSBAND AND WIFE (§ 333*)—ALIENATING AFFECTIONS—ACTION—EVIDENCE.
    In an action for alienating the affections of plaintiff's wife and debauching her, a decree of divorce, obtained by plaintiff since the acts complained of, is admissible in evidence for the purpose of showing a severance of the relations between him and his wife.
    [Ed. Note.—For other cases, see Husband and Wife, Dec. Dig. § 333.*]

4. HUSBAND AND WIFE (§ 326*)—RIGHT OF ACTION.
    A husband is not precluded from recovering damages for the debauching of his wife by the fact that he saw her meet defendant at night, and might have prevented the injury complained of, unless he connived at it.
    [Ed. Note.—For other cases, see Husband and Wife, Dec. Dig. § 326.*]

5. HUSBAND AND WIFE (§ 335*)—INSTRUCTIONS—"CONNIVANCE."
    An instruction in an action for debauching plaintiff's wife held to correctly and sufficiently define the word "connivance," as applied to the facts in evidence.
    [Ed. Note.—For other cases, see Husband and Wife, Dec. Dig. § 335.*
    For other definitions, see Words and Phrases, vol. 2, p. 1435.]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**6.** MARRIAGE (§ 50*)—PROOF OF MARRIAGE—SUFFICIENCY.

    A marriage may be proved by the testimony of one of the parties that they were married by a priest and proof that they lived together as husband and wife for a number of years, where a statute of the state provided that the validity of a marriage should not be affected by the want of jurisdiction of the judge, justice, or minister who solemnized the same, · if consummated with the belief of the parties, or either of them, that they were lawfully married.

    [Ed. Note.—For other cases, see Marriage, Cent. Dig. §§ 79–89; Dec. Dig. § 50.*]

In Error to the Circuit Court of the United States for the Eastern Division of the Eastern District of Washington.

Wm. Wallace, Jr., M. S. Gunn, C. S. Voorhees, and Reese H. Voorhees, for plaintiff in Error.

F. H. Graves, W. G. Graves, B. H. Kizer, and J. M. Simpson, for defendant in Error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge. For alienating his wife's affections and debauching her the defendant in error obtained a judgment against the plaintiff in error for the sum of $9,125 and costs. Error is assigned to the instruction to the jury permitting them to award punitive damages. It is the general rule that damages which may be recovered in this class of cases are exemplary rather than compensatory. 21 Cyc. 1628; 8 Am. & Eng. Enc. of Law (2d Ed.) 266. And the Supreme Court has said, in Day v. Woodworth, 13 How. 371, 14 L. Ed. 181:

    "It is a well-established principle of the common law that in actions of trespass, and all actions on the case for torts, a jury may inflict what are called exemplary, punitive, or vindictive damages upon a defendant, having in view the enormity of his offense, rather than the measure of compensation to the plaintiff."

The same was held in Lake Shore, etc., Co. v. Prentice, 147 U. S. 101, 107, 13 Sup. Ct. 261, 37 L. Ed. 97, and Scott v. Donald, 165 U. S. 58, 17 Sup. Ct. 265, 41 L. Ed. 632.

But the plaintiff in error contends that a different rule has been established by a decision of the Supreme Court of the state of Washington, and that a federal court within that state is bound to follow the law so established. The decision referred to is Spokane Truck & Dray Co. v. Hoefer, 2 Wash. St. 45, 25 Pac. 1072, 11 L. R. A. 689, 26 Am. St. Rep. 842. In that case the court, after alluding to the diversity of opinion on the question whether or not exemplary damages were recoverable, and admitting that the weight of authority seemed to be in favor of the allowance thereof, declared that, as the question was new in that state, its investigation was approached untrammeled by former decisions, and that the court was free to accept the reasoning which most strongly appealed to the judgment, and it announced its conclusion that the doctrine of punitive damages "is unsound in principle and unfair and dangerous in practice." In so holding the court declared a principle of general law which did not involve the construction of the state Constitution or statutes, or the consideration of local customs or estab-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

lished rules of property. In such a case the federal courts are not bound to follow the decisions of the highest courts of the state. B. & O. Railroad v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914, 37 L. Ed. 772; Gibson v. Lyon, 115 U. S. 439, 6 Sup. Ct. 129, 29 L. Ed. 440; Carroll County v. Smith, 111 U. S. 556, 4 Sup. Ct. 539, 28 L. Ed. 517.

But the plaintiff in error argues that the Supreme Court of Washington in the decision above cited has declared the public policy of the state as to the question here under consideration, and cites Hartford Ins. Co. v. Chicago, etc., Ry. Co., 175 U. S. 91, 20 Sup. Ct. 33, 44 L. Ed. 84, in which it was held that questions of public policy as affecting liability for acts done within one of the states of the Union, when not controlled by the Constitution, laws, or treaties of the United States, "or by the principles of the commercial or mercantile law, or of general jurisprudence of national or universal application, are governed by the law of the state as expressed in its. Constitution and statutes or declared by its highest court." In answer to this it is sufficient to say that the decision of the present question is controlled by "principles of general jurisprudence," as declared by the decisions of the Supreme Court of the United States above cited, in which it was held to be a principle of the common law to be administered in federal courts that exemplary damages shall be allowed in cases of tort, such as libel, slander, seduction, etc., where the wrong done to the plaintiff is incapable of being measured by money standard and the damages assessed depend on the degree of moral turpitude or atrocity of the defendant's conduct.

A copy of the decree of divorce between the defendant in error and his wife was admitted in evidence. It is contended that this was error, for the reason that a judgment in a suit is not evidence in another suit against one who was not a party to it. We think there can be no question of the competency and materiality of proof that the plaintiff in such action as this has, since the occurrence of the tort complained of, obtained a divorce from his wife. It is proper for him to show that the wife whom he claims has been debauched no longer sustains that relation to him, and the best proof of that fact is the decree of divorce. In Lee v. Hammond, 114 Wis. 550, 90 N. W. 1073, it was said:

"The admissibility of such evidence seems to be unquestioned, and is generally assumed."

Of course, the decree was not admissible for the purpose of showing the ground on which the divorce was obtained, nor as proof of the act with which the plaintiff in error was charged; and the court properly so ruled.

But it is urged that there was error in admitting it in the present case, for the reason that counsel for defendant in error announced that it was offered "for the purpose of showing that there was a divorce granted because of this very thing." The decree of divorce, however, is silent on the subject of the ground on which divorce was decreed. All that appears from it is that the case came on to be heard on the plaintiff's complaint and the defendant's answer and cross-complaint, that the bonds of matrimony between the parties were dissolved, and that the custody of the minor children was awarded to the defendant in error herein. If there was error, therefore, it was in the statement of

counsel in declaring the purpose of the proffered proof. His language in so doing was not excepted to, nor was any motion made to strike it out. But, even if the decree showed or tended to show the relations between the plaintiff in error and the wife of defendant in error, there would seem, from the record before us, to have been no error in its admission, for it was merely cumulative proof of a fact well established in the evidence and not denied by the plaintiff in error. There was the testimony of the defendant in error that he discovered his wife and the plaintiff in error in bed together in a room in a hotel, the testimony of others who saw them in the room together, and the testimony of two witnesses who testified to admissions severally made to them by the plaintiff in error of the commission of the acts with which he is charged, none of which was denied by the plaintiff in error or by any witness.

Error is assigned to the refusal of the court to give certain instructions in relation to the facts testified to by the defendant in error. He testified in substance that he had formerly been in partnership with the plaintiff in error; that on August 6, 1904, he and his wife and their two children were living in a lodging house; that at about 7 o'clock in the evening of that day his wife, in company with a Mrs. Hanson, went out and did not return until about 2:30 o'clock in the morning; that he was awake waiting for her, and was lying undressed on his bed; that directly after his wife and Mrs. Hanson came into the building he heard some one going out, and, opening the blind of his bedroom window, he saw his wife going down the sidewalk, and saw the plaintiff in error standing on the corner near by; that he dressed hurriedly and went down to the corner, but that they had disappeared; that he went back to his room, not knowing what to do, and stayed with his children until early in the morning; that at 6 in the morning he arose and dressed and made inquiries of Mrs. Hanson, and from information derived from her he went to the Pacific Hotel, where he inquired whether or not his wife had stayed there that night; that he got the number of the room of the plaintiff in error, and, finding a ladder in the hall, used it to look over the transom, where he saw plaintiff in error and his wife in bed together. The defendant in error had alleged in his complaint that the acts with which the plaintiff in error was charged were done without his privity or consent. The answer was a general denial. The plaintiff in error for his defense relied upon connivance on the part of the husband, and it was the theory of his counsel that the defendant in error sent his wife to hunt up the plaintiff in error and obtain money from him in any way she could, by having sexual intercourse with him if necessary. It was in relation to these defenses that the instructions were requested. The court properly instructed the jury on all the essential features involved in the case, and charged them that connivance on the part of the defendant in error would bar recovery. He did not, however, instruct as requested:

"If you find from the evidence that the plaintiff had it in his power to prevent the debauchery of his wife, and neglected to do so, he could recover at most only the actual pecuniary damages he sustained."

The court had told the jury that if the husband sent his wife to the defendant in order to borrow money, contriving at the wife's undoing,

or intending that she should be undone if necessary to obtain the money, or contemplating that result, it would be connivance. The theory upon which the instruction so refused was requested was that the defendant in error heard his wife leave the house, and saw her join the plaintiff in error, and then and there could have stopped her, and could have prevented her debauchery at the hotel, and that it was his duty then and there so to do. We do not conceive that the requested instruction embodies a hard and fast rule of law applicable under all circumstances, or that there was error in its refusal in the present case. In 2 Bishop on Marriage and Divorce (6th Ed.) § 9, it is said that a husband who suspects his wife "may watch her and even leave open the opportunities which he finds, but he must not make new ones or lay temptations in her way"; and such is the doctrine of the decisions in Lee v. Hammond, 114 Wis. 550, 90 N. W. 1073, Wilson v. Wilson, 154 Mass. 194, 28 N. E. 167, 12 L. R. A. 524, 26 Am. St. Rep. 237, Puth v. Zimbleman, 99 Iowa, 641, 68 N. W. 895, and many other cases.

It is contended that the court erred in refusing to define the word "connivance" as requested by the plaintiff in error, and as defined in Black's Dictionary, as follows:

"You are instructed that connivance is the secret or indirect consent or permission of one person to the commission of an unlawful or criminal act by another. It consists of a winking at or an intentional forbearance to see a fault or other act."

The definition given by the court was taken from Bouvier's Dictionary as follows:

"It is an agreement or consent, indirectly given, that something unlawful may be done by another. This is its application to the matter before you."

It is urged that the definition as given failed to advise the jury that there might be a passive connivance, a consent of the mind. But a consent of the mind can only be evidenced by the acts and conduct of the person whose mind consents. The instructions given by the court sufficiently advised the jury of the meaning of the term "connivance," in view of the evidence in the case, if indeed, the word needed definition.

Error is assigned to the refusal of the court to instruct the jury to return a verdict for the plaintiff in error for the want of sufficient proof of a valid marriage, and on the ground that the uncontradicted evidence of the defendant in error showed such conduct on his part as to bar recovery. As to the marriage, the testimony of the defendant in error was that on April 3, 1891, he and his wife were married in the house of a Catholic priest in Missoula, Mont.; that a regular ceremony was performed; that he and his wife stood up before the priest, and that the priest married them. The plaintiff in error, apparently satisfied with this proof, made no effort to elicit further facts in regard to the nature of the ceremony, and offered no proof to rebut the same. It is shown, further, that from the time of the marriage the defendant in error and his wife lived together as husband and wife, and were known as such. A statute of Montana, in force at the time of the marriage, provided that the validity of a marriage solemnized before a judge, justice, or minister should in no way be affected on account of

want of jurisdiction or of authority, "provided it be consummated with the full belief on the part of the persons so married, or either of them, that they have been lawfully joined in marriage." We think the proof in the present case was sufficient to justify the jury in finding that there was a marriage. Fleming v. People, 27 N. Y. 329; People v. Calder, 30 Mich. 85; Kilburn v. Mullen, 22 Iowa, 498; Jacobsen v. Siddal, 12 Or. 280, 7 Pac. 108, 53 Am. Rep. 360.

Nor does it appear that the case should have been taken from the jury on the other ground suggested in the motion. It is unnecessary to review the evidence in detail. If the jury believed the testimony of the defendant in error, and from their verdict they must have believed it, there was in it sufficient to show that he did not contrive for his wife's downfall, and that he did not suspect her of intimacy with the plaintiff in error until he heard her leave the house in the early morning of August 7th, and saw her join the plaintiff in error on the street corner some 150 feet away. His testimony is susceptible of the construction that he did not connive in her undoing or consent thereto. It is argued that he might have shouted from his window, or otherwise might have detained his wife on her way to join her paramour; but it is to be said in answer to this that it does not appear that he had reason to know what she intended to do, and his testimony was that, when he hurriedly dressed and pursued her, she and the plaintiff in error had disappeared, and he had no clue as to their whereabouts.

We find no error for which the judgment should be reversed. It is accordingly affirmed.