iWARD, Appellant, vs. THOMPSON, Respondent.

*May 2—June 1, 1911.*

*Criminal conversation: Damages: Mitigation: Evidence: Cross-examination of husband: Attitude toward marriage: Reputation of wife for chastity: Remoteness: Unchaste acts: Inadequacy of damages: Prejudicial remarks by court: Appeal.*

1. In an action for criminal conversation, where the answer admits defendant's guilt, the evidence in mitigation of damages may properly take a wide range, and it is proper to show by the circumstances of their lives the moral attitude of both the plaintiff and his wife toward the marital relation, also whether or not their married life was a happy one.
2. For this reason, and also because the plaintiff upon his direct examination had testified in a general way as to his life previous to his last marriage, it was not error to compel him upon cross-examination to testify concerning a former marriage, the length of time he lived with that wife, and the divorce obtained by her for desertion and non-support.
3. The cross-examination of a party testifying in his own behalf can take a wide range before prejudicial error can be predicated thereon.

4. In an action for criminal conversation the wife's reputation for chastity before her marriage to plaintiff may be shown in mitigation of damages, provided such reputation is not too remote in point of time.

5. The degree of remoteness of time and place concerning which evidence of reputation of the wife will be received, rests largely in the discretion of the trial court, and depends also in large measure upon the particular facts and circumstances of each case.

6. Where, as in this case, the plaintiff and his wife have led a roving life, and it is apparent that evidence recent in time and proximate in place is not obtainable, evidence of a remote character may be admitted.

7. Evidence of unchaste conduct of the wife, prior to the alleged intercourse with defendant, is also admissible on the question of damages.

8. A question to a witness calling for the reputation of plaintiff's wife "for morality and virtue and chastity" was not misleading because of the use of the word "morality," since the jury must have understood it to apply only to the qualities included in the other terms "chastity" and "virtue."

9. In such action, testimony of a witness as to statements made to her by plaintiff's wife relative to a proposed clandestine meeting with defendant and her reasons therefor, though it would be hearsay as to the question of defendant's guilt, was competent as disclosing the wife's feelings toward her husband, the state of their married life, and the mental and moral make-up of the woman.

10. A statement by the court, in the presence of the jury, referring to the plaintiff, that "a man who will marry a woman, live with her three weeks, and beget a child and go, is not so very different in my estimation from a man who had connection with the same woman without marriage," though unjustifiable, is *held*, in view of sec. 3072*m*, Stats. (Laws of 1909, ch. 192), and of the particular circumstances of the case, not to constitute prejudicial error.

11. The amount of damages to be given in an action for criminal conversation is peculiarly a question for the jury, and its award, though it may seem quite small, will not be set aside unless it is clear that some error, passion, or prejudice has intervened, to which the inadequacy can reasonably be attributed. ·

APPEAL from a judgment of the circuit court for Grant county: GEORGE CLEMENTSON, Circuit Judge. *Affirmed.*

Action for criminal conversation. The complaint alleged that on and between the 15th day of December, 1908, and the 8th day of April, 1909, while plaintiff was living with his wife, Minnie Ward, the defendant did, at divers times, in Wisconsin and at the city of McGregor, Iowa, with the intent to injure plaintiff and to deprive him of the comfort, aid, society, and assistance of his wife, wilfully and maliciously seduce and carnally know her, without his privity or consent, to his damage in the sum of $25,000.

The answer admitted that the defendant and a woman by the name of Minnie Ward, who was living with the plaintiff and claimed to be his wife, did have sexual intercourse with each other at the city of McGregor, Iowa, on a single occasion, in the month of April, 1909, but alleged that said intercourse was had by the procurement and with the connivance and consent of the plaintiff.

The court directed the jury to find for the plaintiff and submitted to them the question of damages only. They returned a verdict for $300 compensatory damages and nothing for punitory damages. From the judgment entered thereon the plaintiff appealed.

*J. S. Earll* and *Charles H. Schweizer,* for the appellant.

*Geo. B. Clementson,* for the respondent.


VINJE, J. At the time of the trial the plaintiff was about thirty-five years of age. In 1899 he married one Tillie Kuntzman at Minneapolis, Minnesota, begot a child with her, and, after three weeks of married life, left her. In 1901 she obtained a divorce from him, and he has never paid anything toward her support nor that of his child. In 1903, at Gas City, Indiana, he married a Mrs. Miller, the wife debauched by the defendant. In 1909 he secured a divorce from his second wife. Minnie Ward, the wife of plaintiff, was about thirty years old at the time of the trial. Her maiden name was Ora M. Williamson. In 1901 she married Arthur Mil-

ler, lived with him about five months, and left him. In 1902 she secured a divorce from her husband, and the following year she married the plaintiff. In 1909 he secured a divorce from her, and since then she married a man by the name of Kraer. Such in brief is the matrimonial history of plaintiff and his wife up to the time of the trial. After they were married in 1903 they lived for a short time at Gas City and Fowlerton, Indiana, then removed to Wisconsin, where they lived for about six weeks; then went to St. Louis, Missouri,. residing there about eight months, and then returned to Indiana for a short time. They afterwards lived for about two. years at Grand Rapids, Michigan, namely, from about November, 1904, to the fall of 1906. They then removed to Bridgeport, Wisconsin, where they resided a little over a year. In 1908 they rented the defendant's farm and kept house thereon from March, 1908, until April, 1909, when they separated, Mrs. Ward returning to Indiana. The evidence shows that defendant was a frequent visitor at the Miller home during the last three or four months that Mrs. Miller lived with her husband, and there seems to be some ground for the claim that he was instrumental in causing her to leave her husband.

These facts, briefly stated, as to the marriages and divorces of plaintiff and his wife, and their roving life while they lived together, have a direct bearing upon the alleged errors. in the admission of evidence and upon the remarks of the court excepted to. It should also be borne in mind that the only question at issue in the case was that of damages. The guilt of defendant was admitted in the answer and the jury were instructed to find for the plaintiff. Hence it may well be that considerable of the evidence received would be inadmissible to prove guilt, and that its admission on that issue, were one in the case, would be prejudicial error, yet its reception in mitigation of damages may not be error at all, or at most harmless error. In such cases, where the guilt is ad-

mitted, the evidence in mitigation of damages may properly take a wide range.  A number of questions enter into the consideration as to what sum of damages should be assessed. Among such questions are these: What is the moral attitude of the plaintiff towards the marriage tie? Does he regard it as a sacred, binding tie, or does it rest but lightly upon him? Does he respect the sacredness of that tie between others, or is he ready to trespass upon it if opportunity offers? The same questions apply equally to his wife, for a double reason. In the first place, they have a direct bearing upon her value as a wife to plaintiff, and, in the second place, they also have a direct bearing upon the *quantum* of guilt of the defendant in seducing her—a vital issue as to punitory damages.  So, also, the fact as to whether or not the married life of plaintiff and his wife was a happy one is at issue.  *Lee v. Hammond,* 114 Wis. 550, 90 N. W. 1073.

In the light of these general principles, and always bearing in mind that the evidence was introduced upon the question of damages only, and not upon that of guilt, we will briefly consider some of the errors relied upon to reverse the judgment.

It is argued that it was error to compel plaintiff upon cross-examination to testify concerning his marriage with and divorce from Tillie Kuntzman prior to his marriage with Mrs. Miller, and as to the length of time he lived with such former wife, as to whether or not he abandoned her, and other facts in relation to his married life with and separation from such former wife.  Plaintiff upon direct examination had testified in a general way as to his life previous to his marriage with Mrs. Miller.  Such being the fact, it cannot be claimed that the court erred in permitting cross-examination as to his previous marriage and the manner in which it was terminated. Such evidence tended in some degree to indicate plaintiff's attitude toward the marriage tie.  In cases of this kind injury to the husband's feelings forms the basis of damages, and the extent of such injury can in some degree be ascer-

tained from evidence relating to the moral and mental make-up of the plaintiff and his previous conduct relative to the marriage relation. Moreover, the cross-examination of a party testifying in his own behalf can take a wide range before prejudicial error can be predicated thereon. *Schultz v. C. & N. W. R. Co.* 67 Wis. 616, 31 N. W. 321.

It is further urged that it was error to receive in evidence portions of depositions of several persons relating to the character and reputation of Minnie Ward prior to the time she became the wife of plaintiff, and dating back as far as the year 1900. These depositions were taken in Indiana, where plaintiff's wife had lived for some time before her marriage to Miller and to plaintiff. It is well settled that the wife's reputation for chastity before her marriage to plaintiff may be shown, provided such reputation is not too remote in time, and that the jury may consider in mitigation of damages the fact, if it be a fact, that the wife and the defendant were equally guilty. *Lee v. Hammond,* 114 Wis. 550, 90 N. W. 1073; *Smith v. Hockenberry,* 146 Mich. 7, 109 N. W. 23; *Conway v. Nicol,* 34 Iowa, 533; *Stumm v. Hummel,* 39 Iowa, 478; *Foulks v. Archer,* 31 N. J. Law, 58. Had the plaintiff and his wife resided for some considerable length of time in any one community where it had been possible to obtain evidence as to her reputation for chastity, it is doubtful whether the evidence offered in the depositions could be considered competent; but in view of the roving life of plaintiff and his wife, moving from place to place and living but a short time in each, and under such conditions that it is quite probable it would be impossible to obtain any testimony as to her reputation in any of the places where she lived, except at her old home in Indiana and its immediate vicinity, we have reached the conclusion that in this case the testimony was competent. The extent of the remoteness of time and place concerning which evidence will be received as to the reputation of a party or witness rests largely in the discretion of the trial court, and depends also in a large measure upon the particular facts and

circumstances of each case. If it is apparent to the court that competent evidence not remote either as to time or place is obtainable, then evidence somewhat remote as to either is properly excluded. But if it is apparent that the circumstances of the case do not permit of evidence recent in time and proximate in place, then evidence of a remote character may be admitted, especially evidence relating to the general moral make-up of a person.

Besides, her former reputation is also sought to be connected with her reputation and conduct in and about Bridgeport, where she lived for nearly two years prior to the time of the trial. Several witnesses testified on behalf of the defendant that Mrs. Ward, while she lived in Wisconsin, frequently visited a woman living near Patch Grove whose reputation for chastity and morality was bad. One witness testified that in 1908 he came to plaintiff's house to fix the telephone; that while there Mrs. Ward followed him into the adjoining room where the telephone was located, shut the door, pulled down the curtain of the window, put her foot up on a chair close to the telephone where witness was working and said to him, among other things, that certain persons, naming them, were calling there quite often; that she did not "know what the old stiffs were hanging around here for;" that she did not "want anything to do with old bucks like that." Such evidence was competent. *Smith v. Hockenberry,* 146 Mich. 7, 109 N. W. 23.

Error is also assigned because the court permitted a witness to answer the following question: "Based upon that, you may state whether or not her reputation for morality—you may state whether her general reputation in the community where she lived for morality and virtue and chastity was good or bad?" on the ground, among others, that her reputation for morality was not in issue—only her reputation for virtue and chastity. While the word "morality" covers a wider field than the words "virtue" and "chastity," yet it is obvious that the jury were not misled by its use in the question objected to.

A want of chastity is a want of morality, and the jury must have understood, we think, the term "morality" to apply only to the qualities included in the terms "chastity" and "virtue," and not to relate to other distinct qualities of morality.

Stella Herold, a witness for the defendant, was permitted over objections to testify to conversations she had with Mrs. Ward on the day prior to the visit of Mrs. Ward and the defendant at McGregor, Iowa, in which conversation Mrs. Ward told the witness that she was going to meet a man by the name of *Thompson;* that she was tired of the life she was living; that all she saw was cows and pigs on the farm, and that she wanted a different life; that she wanted a life that *Lee Ward* could not give her, and that was money and good clothes; that *Mr. Thompson* was from Grant county, not good looking, but rich, and that she wanted some of his money. It is claimed that this conversation was purely hearsay and should not have been admitted. It would certainly have been hearsay as to the question of the guilt of the defendant, but it was competent on the question as to what Mrs. Ward's feelings toward her husband were, as to the state of their married life, and as to the mental and moral make-up of the woman who would disclose such intended acts to the witness, who was almost a stranger to her. Also upon the question as to whether or not she was seduced by the defendant or was yielding to the dictates of a licentious or mercenary disposition, or both. It was therefore relevant both upon the question of the amount of compensatory damages plaintiff was entitled to and the amount of punitory damages, if any, that should be assessed against the defendant.

Near the beginning of the trial, after a colloquy between counsel and the court as to striking out plaintiff's testimony relating to his first marriage, the court in the presence of the jury said:

"Without passing upon that question, the proof so far shows that according to his [plaintiff's] own statement a girl from Prairie du Chien came to Minneapolis, apparently by

arrangement if not at his direct request, that he married her, begot a child, and abandoned her.   Now that particular fact being before the jury, I think is properly before the jury because it indicates something of the idea of this plaintiff in reference to the marital relation, and edges up pretty close to having illicit intercourse.   A man that will marry a woman, live with her only three weeks and beget a child and go, is not so very much different from a man who had connection with the same woman without marriage, in my estimation."

The making of such a remark by a trial judge in the presence of the jury cannot be justified.   But the question recurs, Does it, in view of sec. 3072m, Stats. (Laws of 1909, ch. 192), constitute such prejudicial error as to call for a reversal of the judgment?   This remark was made by the court on the first day of the trial.   The trial lasted four days. The case was submitted to the jury under instructions satisfactory to the plaintiff, for no exceptions are taken to them. In view of these facts and of all the testimony in the case relating to the marriage experiences of the plaintiff and his wife, their moral and mental make-up, so far as it was disclosed by the testimony, we cannot say with any degree of certainty that, in the absence of such a remark by the court, the jury would have arrived at a different result.   The amount of damages to be given in cases of this kind is peculiarly a question for the jury, and its assessment, though it may seem quite small, will not be set aside unless it is clear that some error, passion, or prejudice has intervened to which the inadequate assessment of damages can be reasonably attributed.

We have considered plaintiff's main assignments of error, but not in detail.   Many of them have been grouped for the sake of brevity.   Others not touched upon are deemed of insufficient importance to deserve special treatment.

*By the Court.*—Judgment affirmed.