SCHULTZ, Appellant, vs. THE CHICAGO & NORTHWESTERN RAILWAY COMPANY, Respondent.

*December 17, 1886 — January 11, 1887.*

RAILROADS: MASTER AND SERVANT: NEGLIGENCE: EVIDENCE. *(1, 2) Risks of employment assumed by servant: Notice of dangerous custom: Method of loading tender with coal. (3) Injury purely accidental. (4) Who are fellow-servants? (5) Cross-examination of party.*

1. In an action by a track-walker for injuries caused by a piece of coal falling from a tender on which the coal was heaped up above its top, the plaintiff's own testimony showed that he had seen the tender overloaded in that way before, that it was customary so to load it, and that he had seen pieces of coal on the track. *Held,* that if such method of loading was negligent, yet the plaintiff, having knowledge thereof, assumed the risk of injury therefrom as one of the risks incident to his employment.

2. To load a tender with coal above the level of its top is not negligence *per se*, and notice to the railroad company that its employees were in the habit of so doing, without knowledge or notice that such practice was dangerous, is not sufficient to make the company liable for an accident resulting from such method of loading.

3. An injury to a track-walker by a piece of coal falling from the tender of a passing engine is *held* in this case to have been purely an accident for which no action will lie.

4. Coal-heavers or firemen who load coal upon tenders are fellow-servants of a track-walker, and for an injury to the latter caused by their negligence in such work the railroad company is not liable.

5. The cross-examination of a party need not be so strictly confined to the matters inquired into upon his direct examination as in the case of other witnesses.

APPEAL from the Circuit Court for *Juneau* County.

The principal facts are stated in the opinion. Upon his cross-examination the plaintiff testified, among other things, that he had seen pieces of coal lying along the track while he was trackman. He was then asked, " You knew that coal did sometimes fall off the engines ?" An objection to this question, on the ground that it was not proper cross-examination, was overruled, and the plaintiff answered, " I had seen coal occasionally along the track before; I did sometimes."

For the appellant there was a brief by *Winsor & Winsor*, and oral argument by *Mr. F. Winsor*. They contended, *inter alia*, that it was error to permit the plaintiff to be cross-examined as to matters purely defensive not gone into upon the direct examination. *Norris v. Cargill*, 57 Wis. 251; Abbott's Trial Brief, 46; 1 Greenl. on Evi. secs. 445, 447; *Davis v. Neligh*, 7 Neb. 87; *P. & T. R. Co. v. Stimpson*, 14 Pet. 448–461; 5 Wend. 563; 1 Hill, 101; *Glenn v. Gleason*, 61 Iowa, 28. A defendant who has, by cross-examination of plaintiff's witnesses, brought out affirmative evidence properly a part of his case, cannot move for a nonsuit until the plaintiff has had an opportunity of rebuttal. Abbott's Trial Brief, 120.

For the respondent there was a brief by *Jenkins, Winkler, Fish & Smith,* and oral argument by *Mr. Winkler.*

ORTON, J. The plaintiff had been in the employment of the defendant company as track-walker from Elroy to Kendall, whose business it was to go over the track and see that everything was in order, and if anything was out of order to fix it or, if dangerous, to stop the trains. He had been thus employed about six months, but had been employed along this portion of the track about other business of the company about four years, and was well acquainted with the passing of the trains and the management of things generally along that portion of the track. On the night of the 22d of April he started about six o'clock in the evening to walk his route or beat from Elroy to Kendall, and when he had arrived near Kendall he found a bolt out of place and stopped to fix it; and while so engaged he saw the train coming out of Kendall, and he waited until it came about three lengths of a rail from him, and then he stepped off the embankment and down towards the water of a mill-pond there, about six or seven feet. The track came within a little over three feet from the top of the embankment, and there the bank sloped down to the water, and it was level at the bottom a short distance from the water. While he was thus standing on the fireman's side of the engine he looked into the engine as it passed and saw the fireman doing something in the cab, and when the tender was passing him he saw a dark object fall or was thrown from it, and it struck him in the side and injured him quite severely. He fell down, and was helpless, and was assisted to Kendall. He saw near where he lay a piece of coal about the size of a man's soft hat, and it appeared that that was what hit him, and that probably fell from the tender. He saw that coal on the tender was above the top of it before the train reached him. He had seen pieces of

coal lying along the track, and knew that coal sometimes fell from the tender. Kendall was the regular station for loading coal to last to Baraboo. In the course of his business, he had usually met about eight freight trains and three or four passenger trains per day on that part of the track. It was about eight o'clock that evening when the accident occurred, and it was not very dark, but he had a lantern. He had before seen coal above the top of nearly every tender that passed on the road, but had never known coal to fall off in this way before. The same train usually passed him every day. The fireman usually loads at Kendall what he thinks is sufficient coal for the run. This is substantially all the testimony of the plaintiff and other witnesses for him.

The plaintiff sought to prove what had been the customary way of loading coal, as to piling it up above the top of the tender, about that time and for two or three years before. This was objected to, and the objection sustained. At the close of the plaintiff's testimony the circuit court granted a nonsuit in the case.

1. Was it error to reject the testimony offered as to the habit or custom of the company in respect to loading the coal so as to be above the tender, or as to piling it up? It is not contended by the learned counsel of the appellant that such evidence was proper for the purpose of showing negligence in this particular case; but it is contended that it was proper to show such general habit or custom for the purpose of showing notice to the company of such common and customary negligence, which ought to have been in some way corrected, and of showing that the company had affirmed, approved, and assumed the negligence of its employees in this respect, and made their negligence its own. In other words, that the company had assumed all the responsibility and liability for the risks of such negligence. For such purpose, this evidence would have reacted

upon the plaintiff to defeat his action; for the same evidence would have shown his own actual knowledge of such a common risk of his employment, and that he as well as the company had assumed them. If it was negligence in the company to have tacitly allowed the continuance of such a customary way of loading its cars after presumptive notice of it, equally so and more was it negligence of the plaintiff to continue in such a dangerous employment after actual knowledge of it, and he certainly had superior means of knowledge. *Hughes v. W. & St. P. R. Co.* 27 Minn. 141; *P. & C. R. Co. v. Sentmeyer*, 92 Pa. St. 280; *Naylor v. C. & N. W. R. Co.* 53 Wis. 664; *Hobbs v. Stauer*, 62 Wis. 110; *Ballou v. C. & N. W. R. Co.* 54 Wis. 269; *Leary v. B. & A. R. Co.* 139 Mass. 584; *Gibson v. Erie R. Co.* 63 N. Y. 453.

The testimony of the plaintiff was that he had seen the tender overloaded (as claimed) in this way often before, and had stepped aside and let the train pass as in this instance, and that he had seen pieces of coal on the track within his route or beat, and that way of loading the tender was nearly always and invariably so. If there was in this way of loading any such risk or hazard or danger to be anticipated or apprehended in this employment, by continuing in it without complaint or objection he assumed such risk and hazard; and he certainly could not recover if he happened at some time to be injured by such a customary mode of loading the tender with coal. First, then, by his own evidence and by the above authorities and the commonly accepted law upon that condition of the case, he ought not to recover, and the nonsuit was proper.

2. Was it negligence of the company, even if they knew of such a customary method of loading the tenders on their road? Such an accident had never happened before from such a cause. It was a very strange and almost unaccountable accident. It was common to load the tender in that

way, and it may have been actually necessary in order to provide coal enough to last to the next coal station. Is it negligence to pile or heap up the coal above the dead level of the top of the tender? In this way coal had always been carried without any danger or accident. The plaintiff had never expected, feared, or apprehended any danger from it, or he would have been sure to be out of the way when a train passed, or quit the employment of track-walker. Can this court say in this case, as a matter of law, that this way of loading the tender was or is *ipso facto* negligent.

Negligence is a question of law when the facts are undisputed as in this case. It might make a radical change in the size and capacity of the tender or in the distance between coal and wood stations, if the coal or wood must not be piled or heaped up above the level of the top of the tender. It would seem reasonable to put on the tender all the coal or wood it could safely carry, even above the top, and if by chance or by the jarring of the car over a rough road one single piece of coal or stick of wood should fall off and injure an employee who knows all about this usual way of loading the tender, and if he should notwithstanding place himself so near the side of the cars as to be injured by it, it would seem to be a mere *mischance or accident*, out of the common course of things, and against which the company, in the exercise of common care and prudence or of such care as all other railway companies exercise in such a case, is not required to provide. The act of negligence complained of is the piling of the coal up above the top of the tender. We cannot and dare not say that this was negligence *per se*. The company provided safe machinery, and the cars were managed with care, and the road-bed was perfect, and no complaint is made of anything else, except that the coal-heaver at the station or the fireman crowned or piled up the coal on the tender in the very way that this plaintiff had always observed, and that all tenders

were loaded, and without a single accident from such cause before this. This case, in this respect, falls within the principle of a mere accident, occurring unexpectedly and almost unaccountably from a common course of things in which it had never happened before and is not likely to happen again, and is attributable to a cause not usually and scarcely ever followed by such a consequence. The case in this respect also falls within the decision of a similar class of cases of unexpected and unusual accidents where no recovery can be had, as in *Morrison v. P. & C. Const. Co.* 44 Wis. 405; *Steffen v. C. & N. W. R. Co.* 46 Wis. 259; and *Sorenson v. Menasha P. & P. Co.* 56 Wis. 338.

For this reason, also, we think that the nonsuit was properly granted.

3. We do not think that this way of loading the tender with coal, however common or invariable, was notice to the company of such act or neglect as one of danger, hazard, or negligence, so as to make the company liable. For that purpose the company must be presumed to know that the act was one dangerous in itself or from its dangerous consequences or from its liability to injure those persons who should stand near the track of the road. But this the company or anybody else did not know, and could not know until some such unusual accident as this had happened. The company might know that this was the usual method and way of loading the tender, and not be liable. It must also know that it is dangerous in itself to do so, or that it is liable to produce injury to others. But no one ever dreamed of such a consequence as happened to the plaintiff in this instance. In such knowledge as the company had, or was presumed to have had from its usual occurrence, there was no duty involved to discontinue such a way of loading the tender, and from it no liability for its neglect of duty could possibly arise, for the company did not know,

and had no reason to know, that it was its duty to discontinue this practice, and did not·know that it was unsafe. Aside from this knowledge of the company, the company had not assumed any liability for the acts of its servants, and from such knowledge as the company might be presumed to have had of the practice because it was common and invariable, we do not think the jury would have had any right to find that it had assumed this act or practice of its servants, that was never before found to be hazardous or dangerous.

This car was loaded in this manner by the coal-heaver or fireman, as the co-employees of the plaintiff. Their grade of employment was no higher than his. There was no proof that they so acted as the representatives or under the orders of the company. If there was negligence in this particular case, it was the negligence of the plaintiff's fellow-servants and not of the company, and the plaintiff therefore was not entitled to recover, according to numerous similar cases in the court, which from their great number need not be specially cited. For this reason, also, the nonsuit was proper.

Many other cases might be cited applicable to this case; as, where an employee remains in the business or employment after he obtains knowledge of its risks, he cannot recover for an injury arising therefrom (*Kelley v. C., M. & St. P. R. Co.* 53 Wis. 74); or as where an employee in a lumber yard is assisting in piling up lumber that is slippery and liable to fall, and that a slight jar would cause to fall upon him, and he is injured by the pile falling, he cannot recover (*Hoth v. Peters*, 55 Wis. 405).

4. The testimony of the plaintiff obtained upon his cross-examination made no material difference in the case as made by his testimony in chief, and we do not think, if it had, it would have been error to have admitted it against the objection of the plaintiff's counsel, for the rule of cross-

examinations of a party as a witness is more liberal. *Knapp v. Schneider*, 24 Wis. 70.

*By the Court.*— The judgment of the circuit court is affirmed.

See note to this case in 31 N. W. Rep. 324.— REP.