JORGENSON, Executrix, Respondent, vs. HILLESTAD and another, Appellants.

*May 12—June 10, 1947.*

E. B. *Bundy* of Eau Claire, for the appellants.

For the respondent there was a brief by *Wilcox, Wilcox & Sullivan* of Eau Claire, and oral argument by *Francis J. Wilcox.*

FRITZ, J.    The principal question on this appeal is whether the proof sustains the jury's award of $5,000 as King's damages for injuries sustained by him as the result of Hillestad's negligence in operating his automobile on June 28, 1945; and whether that award was warranted by the proof depends on whether there was sufficient competent, credible evidence from which the jury could find that the injuries then sustained by King as the result of Hillestad's negligence were the cause of a heart attack which King had on August 15, 1945, by reason of a coronary occlusion.

It appears without dispute that as the result of the collision between Hillestad's car and the cab in which King was riding, the cab rolled over on its top which caved in, and King was crushed in the cab.    A police officer who was at the scene of the accident testified that King there complained of having pain in his chest and back.    Plaintiff testified that he felt a rib puncturing his lung; that in the left side of his chest he felt

pain, which was constant and hurt when he breathed; that he was black and blue and ached all over the side of his chest; and that he was removed from the car and taken to a hospital where a cut on his thumb, which was badly lacerated, was dressed, and a fracture of the distal joint of the thumb was treated. After an hour he went to the office of his employer and then home and into bed. He had pains in his chest and could not get breath, and this lasted all day and night. Three days later he went to the doctor to see about the pains in his chest, and went back to him four times about his chest. In July, to find out what was wrong with his chest, he went to a different doctor, Dr. Werner, who told him he could not find anything wrong with the chest. Plaintiff had to lay off from work about seven days because he had pain in his chest, which was worse some times than others. When he exerted himself he would get that pain which made him short-winded and hard for him to breathe.

On August 15, 1945, King three times called Dr. Werner to treat him and who told him to go to the hospital. There an electrocardiogram was taken and King was told his heart was in bad shape. Since August 15, 1945, King did not do any work for anybody. If he worked he got a pain and was short of breath and all in, and the pain in the region of his chest started six or eight inches below the left shoulder and went up to the shoulder and down the left arm. After King was advised he had heart trouble he consulted Drs. Nimz and Murphy at Milwaukee, whom he had consulted in February, 1945. At that time he was not having any pains in his chest. Between June 28, 1945, and Dr. Werner's diagnosis on August 15, 1945, nothing had happened to King outside of his ordinary course of living to cause any change in his condition.

Dr. Nimz testified that before the accident he had examined King on February 24, 1945, and an electrocardiogram was taken and was found to be essentially normal; that he saw King again on September 15, 1945, who then complained of pain over the precordium in the chest, which was radiating

down to the abdomen, and of shortness of breath on exertion; that King gave a history of having been in an automobile accident on June 28, 1945, and immediately following the accident he had noticed a pain in the region of the heart, and that he had broken out into a cold sweat and felt weak and faint and was short of breath; that Dr. Nimz then took another electrocardiogram which revealed that there had been damage to the heart muscle, and showed evidence of damage thereto, while the earlier cardiogram did not. Dr. Nimz testified it was his conclusion that the fact that King had a normal cardiogram on February 24, 1945, in connection with the history of his having been in an automobile accident, indicated there was some damage to the heart caused by the accident and that he had had a nonpuncturing injury,—in other words a contusion in the area of the chest overlying the heart,—and that it was Dr. Nimz's theory that some outside blow damaged King's heart muscle at the time of the accident; and that in his opinion, based upon examinations of King, he was suffering from a myocardial damage in the front wall of the heart, which was caused by the blow or contusion to his chest in the accident on June 28, 1945. Dr. Nimz testified also that, in view of the condition of King revealed on February 24, 1945, the condition which Dr. Nimz found on September 15, 1945, could not be caused by mental disturbance, temporary exertion, or disease; and that the type of symptoms shown in the electrocardiogram was myocardial damage, the cause of which was directly related to the history of an accident and was easily distinguishable from heart enlargement or any other type of damage to the heart.

Dr. Dawson, called by plaintiff as an expert witness, testified:—in answer to a hypothetical question which, after assuming certain facts as to which no objection was then or is now being made by defendants' counsel, concluded with the words, "Would you as an expert, based on those assumptions, be able to state any opinion as to the cause of the heart damage to the muscle,"—"I think it would be a safe assumption that

it has resulted from the injury." Then, after an answer by Dr. Dawson on cross-examination, to the questions by defendants' attorney, "Is that just speculation or guess, Doctor? Do you say that to a reasonable certainty," there were the following questions by the court and Dr. Dawson's answers, to wit:

"The court: Counsel's question is, upon those assumed facts can you say to a reasonable certainty that his trouble has come from the accident? *A.* I gave that as my opinion. The court: That it is your opinion to a reasonable certainty? *A.* Yes. The court: That you can say that to a reasonable certainty? *A.* Yes, sir."

On the other hand there was the following testimony by defendants' witnesses. Dr. Werner testified he had treated King in December, 1940, for a severe pain in the area of his left chest, which extended into the shoulder and arm and was accompanied by stomach pains; that in July, 1945, he examined King at the request of his employer's compensation insurance carrier, to find the extent of King's injuries from the automobile accident on June 28, 1945; that on August 15, 1945, King had pain in his chest and arms and difficulty in breathing, and all the symptoms of a coronary at that time; that the next morning he had an electrocardiogram taken and sent to Dr. R. F. Poser at Madison, who reported a coronary condition; that when a coronary artery is plugged up the circulation is shut off and you get an infarct into the muscular tissue of the heart, which means a stoppage of the blood going through the coronary artery; and that he prescribed complete rest for King. It was his opinion, based on the examinations he had made of King and the treatment rendered to him that his heart condition was not a traumatic condition, but was one he would expect to find whether or not there was any history of an accident; and that the accident was purely incidental, and it was possible King had been having heart trouble for some period of time; that such a coronary occlusion as he found on August 15, 1945, is always disabling, and if the accident was

a contributing cause to the coronary occlusion he would expect King to have been disabled immediately; that in his forty-six years' experience in practice, Dr. Werner had not found a single coronary occlusion that came about, in his opinion, as a result of an outside blow; that because of the manner in which the heart is protected in the body he did not think it would be possible for a person to have a direct blow on the heart itself unless there was some outward mark of the blow, and he would expect to find ribs broken; that he saw King while in the hospital until his discharge on September 2d, and saw him again on October 13, 1945, and King hinted then that he thought he had heart trouble which was caused from the injury received in the accident; that Dr. Werner had another electrocardiogram taken which came back positive as to coronary, with Dr. Poser's report stating that the electrocardiogram showed a fairly recent anterior wall infarct,—which means there was an injury to the anterior wall of the heart due to a coronary,—and stating also that "the present tracing shows quite marked residual coronary insufficiency;" that this would be consistent with a coronary occlusion and would not be consistent with an injury to the heart caused by trauma. It was Dr. Werner's ultimate conclusion that King had sustained a coronary occlusion; and as he went on in life the artery would have a little more difficulty as he grew older to pump blood through the circulatory system, and finally he would have another coronary at some time, unless he died from some intermediary disease such as pneumonia in the meantime; and that the accident did not have anything to do with the heart condition at all.

Dr. R. S. Rosen, called also by defendants as an expert witness, testified that it was his opinion that the symptoms and heart condition complained of by King could not have been caused by an outside blow; that his heart condition on August 15, 1945, could very probably have occurred without any history of a previous accident; that the accident of June 28, 1945, was not a contributing cause to the heart attack of

August 15th; and that if King had received an injury or damage to his heart on June 28, 1945, from the accident he would expect the results to show up immediately afterwards. On cross-examination Dr. Rosen stated that it is possible that an outside injury such as an injury from a bomb blast could cause coronary thrombosis or angina pectoris, but he would expect to find some sort of injury on the outside of the chest in the nature of abrasions or contusions; and that it would have to be a great force and he would expect the results to be disabling immediately.

King died after the trial and entry of judgment as a result of coronary heart disease. In view of the evidence as to the cab rolling over on its top and the crushing of King; the nature and extent of the contusions sustained by him in the area of his chest overlying the heart and his immediate complaint of pain and the subsequently continuing severe pain in that area; the fact that he did not have any such pain when he consulted Dr. Murphy and Dr. Nimz in February, 1945, and upon the examination then made by the latter and the electrocardiogram then made King was found to be essentially normal, but upon Dr. Nimz's examination and the making of another cardiogram in September, 1945, it revealed there had been damage to the heart muscle; together with Dr. Nimz's testimony that the facts that King had a normal cardiogram on February 24, 1945, but the cardiogram taken on June 28, 1945, showed evidence of damage to the heart muscle which the earlier one did not, and with the history of his having been in the automobile accident on June 28, 1945, indicated King had had a contusion and that some outside blow caused damage to his heart at the time of the accident; and together with also the testimony of Dr. Dawson that he can say to a reasonable certainty that King's heart trouble came from King's accident and injury,—there was sufficient evidence, if considered credible by the jury, to warrant finding that the injury to King's heart was caused by the accident of June 28, 1945. Consequently it was within the province of the jury to find to that

effect, although there was testimony to the contrary by Drs. Werner and Rosen. Inasmuch as there was sufficient competent evidence to sustain the conclusion stated above, this case is definitely distinguishable from *Vogelsburg v. Mason & Hanger Co., ante,* p. 242, 26 N. W. (2d) 678.

Defendants' contention that the court erred in failing to instruct the jury not to take into account expert or other testimony which was merely speculative and conjectural, cannot be sustained. There does not appear to have been any ruling nor is there any error assigned in relation to any ruling by the court on the admission or exclusion of such testimony. And likewise in respect to any such testimony there does not appear to have been any request for such an instruction on that subject. Consequently on this appeal there is no basis for the assignment of error in relation thereto or for the review of the court's omission to give any instruction on the subject.

Defendants contend also the court erred in refusing to receive in evidence a certified copy of findings by an industrial-commission examiner in which he found that other disabilities, of which plaintiff complained, than the injury to his thumb, were not caused or aggravated by his injury on June 28, 1945. Defendants claim the jury was "entitled to know what conclusion the industrial commission, a body of experts, had come to on the question of whether the heart damage was related in any way to the accident." The court's ruling did not constitute any error. The commission's award on the findings in question was merely interlocutory and subject to appeal, and was in fact to be reviewed on an appeal pending at the time of the trial of this action. At best the finding was still merely a reviewable and inconclusive opinion of the examiner; and had not as yet attained the status or *res adjudicata* effect of a finding which has become the basis of a final judgment. Consequently it did not preclude a judicial adjudication upon competent evidence rightly admitted on the trial in court to which plaintiff was entitled. *Hinrichs v. Industrial Comm.* 225 Wis. 195, 273 N. W. 545.

In view of the conclusions stated above in relation to the sufficiency of the evidence, which could be considered credible by the jury to establish to a reasonable certainty that plaintiff sustained permanent injury to his heart as the result of plaintiff's negligence, there cannot be sustained defendants' contentions that the court erred in admitting in evidence certain bills for physician's and hospital services, or erred in instructing the jury as to sec. 314.06, Stats. It follows that the judgment must be affirmed.

*By the Court.*—Judgment affirmed.