ABBOTT, Appellant, v. TRUCK INSURANCE EXCHANGE COMPANY and others, Respondents.

*January 10—January 31, 1967.*

For the appellant there was a brief by *Amidon & Smith* of Hartford and *Charles M. Hanratty* of Milwaukee, attorneys, and *James A. Koester* of Milwaukee of counsel, and oral argument by *Mr. Hanratty.*

For the respondents there was a brief by *Schlotthauer, Jenswold & Studt* and *John F. Jenswold* and *Robert R. Studt,* all of Madison, and oral argument by *John F. Jenswold.*

HALLOWS, J.   The plaintiff claims the trial court erred in giving an instruction on skidding, in admitting a statement given by the plaintiff while in the hospital, in refusing to instruct on the position of the defendant's tractor-trailer on the highway, in refusing to instruct that a representative of the insurance company which insured the tractor-trailer the plaintiff was driving was not representing his insurance company, and finally in limiting the plaintiff's cross-examination of the defendant in respect to statements made in his adverse examination.

The accident happened on the morning of February 1, 1963, on Highway 41 immediately north of the Des Plaines River bridge in Lake county, Illinois. The defendant was driving a tractor-trailer loaded with 50-pound bags of chemicals. The total weight of the loaded unit was about 58,000 pounds and the trailer was 40 feet long. The plaintiff was driving an empty tractor-trailer milk-tank unit weighing about 22,000 pounds. Both drivers were returning from Chicago to Wisconsin. The roadway from Chicago to the Des Plaines River bridge was free of ice, snow and moisture, but the bridge area

and possibly the roadway north to the place of impact was icy and slippery. In the area of the impact, Highway 41 is a four-lane highway divided by a median strip and running generally north and south, the northbound lanes totalling approximately 32 feet in width. At a point about two-tenths of a mile south of the Des Plaines River bridge Highway 41 runs west and northwest and then at the bridge curves to the north.

When the defendant was 75 or 100 yards from the bridge he saw a vehicle ahead of him "swerved a little on the bridge, enough that it alerted me, and continued on its regular course." Defendant took his foot off the accelerator and coasted about 20 yards upgrade toward the bridge and slowed down rapidly. He approached the bridge at 30 to 40 miles per hour and accelerated. While on the bridge his vehicle suddenly began to swerve on the ice, causing it to go out of control. His vehicle proceeded down the road 150 or 200 feet out of control and jackknifed, and came to rest on the median strip with the tractor facing west and the trailer parallel to the highway. He testified that either all of his unit was on the median or possibly a couple of feet of the trailer was in the left northbound lane. The defendant got out of his cab and went to the rear of his trailer and while placing a fusee some distance behind the unit he saw the plaintiff coming over the bridge. This time interval was estimated to be about one minute.

The plaintiff testified he did not see the stalled vehicle until he was halfway across the bridge because of the curve in the road and overhanging trees, and consequently was unaware the bridge was slippery and icy. He applied his brakes "on the strong side" and released them immediately when he was aware of the icy roadway. His vehicle too started to jackknife and continued out of control down the roadway at 40 to 45 miles per hour. The plaintiff avoided the rear part of the stalled trailer but then his trailer lunged to the left into the right side of

the defendant's trailer. The plaintiff was thrown out of his cab to the pavement and his trailer overrode the tractor, plowed into the side of the defendant's trailer and caught on fire.

There is a dispute in the evidence as to the position of the defendant's trailer. The plaintiff testified at the trial that the defendant's trailer extended across the entire left lane and three to four feet into the right northbound lane. After the accident, the defendant's trailer was parallel to the highway but off of it. The defendant testified he did not think his trailer moved after the impact. The police officer who investigated the accident testified it probably moved two feet. Both drivers testified the impact was 150 to 200 feet north of the bridge. The police officer testified that measurements placed the vehicles 340 feet north of the north end of the bridge which itself was about 190 feet in length.

Plaintiff strenuously argues the Wisconsin Civil Jury Instruction No. 1280 on skidding is in effect an instruction on an unavoidable accident and the giving of such an instruction was prejudicial and reversible error. It is also claimed the facts do not present a proper case in any event for an instruction on skidding because the defendant's vehicle was at rest at the time of impact. The plaintiff claims Wisconsin is in accord with a modern trend to abolish the giving of an unavoidable accident instruction because the instruction is prejudicial to the plaintiff's case, overemphasizes the defendant's case, is confusing and misleading to the jury and in any event unnecessary. The plaintiff cites and analyzes many cases for his position and the problem is considered in detail in Anno. Unavoidable Accident Instruction, 65 A. L. R (2d) 12.

This court has not categorically said or held, as has California in *Butigan v. Yellow Cab Co.* (1958), 49 Cal. (2d) 652, 320 Pac. (2d) 500, 65 A. L. R. (2d) 1, that it is error as a matter of law to give an unavoidable accident

instruction. This court has held, however, on the facts of a particular case it was error to give such an instruction when the evidence would not support a finding that both parties to the accident were free of negligence or if there was no evidence the accident happened without negligence. *Mittelstadt v. Hartford Accident & Indemnity Co.* (1957), 2 Wis. (2d) 78, 85 N. W. (2d) 793; *Calhoun v. Lasinski* (1949), 255 Wis. 189, 38 N. W. (2d) 353. In *Van Matre v. Milwaukee E. R. & T. Co.* (1955), 268 Wis. 399, 67 N. W. (2d) 831, we stated in respect to an unavoidable accident inquiry in the verdict, "There may be negligence cases when the inclusion of such a question would be advisable but we are of the opinion that such cases would be rare." 268 Wis. at page 404.

While it may be argued the skidding instruction is in part a special application of the unavoidable accident doctrine, it is not synonymous with such an instruction and has long been used in Wisconsin. The statement in the instruction to the effect that skidding *per se* is not negligence but must be proved to be the result of negligence preceding the skidding or of negligence during the skidding was used in *Linden v. Miller* (1920), 172 Wis. 20, 177 N. W. 909; *Olson v. Milwaukee Automobile Ins. Co.* (1954), 266 Wis. 106, 62 N. W. (2d) 549, 63 N. W. (2d) 740; and *Ryan v. Cameron* (1955), 270 Wis. 325, 71 N. W. (2d) 408. In *Poole v. State Farm Mut. Automobile Ins. Co.* (1959), 7 Wis. (2d) 65, 95 N. W. (2d) 799, we discussed many cases stating or holding the mere fact of skidding will not support an inference of negligence. These cases expressed the idea it is a commonly known fact that cars may skid on greasy and slippery roads without fault because of the manner of handling the car or because the car was driven on the greasy or slippery road. *Churchill v. Brock* (1953), 264 Wis. 23, 58 N. W. (2d) 290; *Voigt v. Voigt* (1964), 22 Wis. (2d) 573, 126 N. W. (2d) 543. We think Wisconsin Civil Jury Instruction No. 1280, based as it is on *Linden v. Miller,*

*supra; Zeinemann v. Gasser* (1947), 251 Wis. 238, 29 N. W. (2d) 49; *Coenen v. Van Handel* (1955), 269 Wis. 6, 68 N. W. (2d) 435; and *Van Matre v. Milwaukee E. R. & T. Co., supra,* is a correct statement of the law and should be used in proper cases.

But the plaintiff argues the facts in this case do not support the use of the instruction because there was no evidence the accident resulted from anything other than the defendant's negligence. The defendant was negligent, it is claimed, because he was alerted to the icy road condition by the swerving of the vehicle ahead of him and did not apply his brakes to slow up prior to driving over the icy bridge and because he accelerated hard enough to put his vehicle into a skid and a jackknife. The jury found this conduct did not constitute negligence and we cannot say as a matter of law, which we would be required to say to override the jury verdict, that such conduct was negligence. Upon becoming aware of the ice, the defendant did decelerate. He testified he had been going 50 miles per hour south of the bridge and had reduced his speed to 30 to 40 miles per hour as he entered upon the bridge. Upon driving on the ice he was accelerating but we cannot say that accelerating a tractor-trailer under these conditions is negligence. Nor was there any testimony that such management and control of a tractor-trailer on ice was negligence. The plaintiff, faced with the same condition, and at about the same speed, applied his brakes with the result his tractor-trailer also went out of control and jackknifed. We find no distinguishing elements which make the sauce any different for the goose than it was for the gander.

While this may be a novel case or the rare case where a jury finds there is no negligence on the part of either the plaintiff or the defendant, the jury's verdict cannot be upset because of its novelty or rarity or upon a distribution-of-the-risk theory that someone must be found guilty of negligence in every accident.

The plaintiff argues it was error for the trial court to refuse to instruct the jury on the position of the defendant's trailer on the highway. The trial judge stated at the pretrial conference he probably would not instruct on position because such an instruction would be a duplication of the instructions on management and control and speed in view of the skidding on the icy roadway. We agree. The defendant's negligence did not depend upon the position of his trailer on the highway after the skidding and its position, assuming it was blocking the highway, did not necessarily indicate negligence. The instruction on skidding and management and control adequately covered the position of the vehicle.

During the trial a statement given by the plaintiff to Kenneth Quinn was admitted in evidence. Quinn was a representative of Carriers Insurance of Des Moines, Iowa, which insured the truck the plaintiff was driving. This statement was given on the evening of the third day after the accident and it is claimed by the plaintiff he was not competent at the time because he was suffering severe pain and was under the sedation of drugs. The record shows the plaintiff was under some pain but does not show its severity or effect. Nor does the record show when the drugs were administered or what effect the drugs had on the plaintiff, if any, at the time he gave the statement.

Quinn testified he was an experienced insurance adjuster and while plaintiff was in some pain, he was rational, coherent and readily and freely responded to the questions. The statement was written out by Quinn but not signed by the plaintiff. The plaintiff testified he did not recall to whom he talked or what he said and now argues it can hardly be said he gave a statement. Although the statement was taken in the presence of the plaintiff's wife, the record does not show any testimony by her on this point. We do not think the record shows the pain suffered by the plaintiff or the sedation was of

such an effect that he could not and did not intelligently answer the questions or that he did not have an awareness to protect his rights so it could be said the statement was not his act.

The admissibility of the plaintiff's statement is important because plaintiff stated the defendant's trailer at the time he struck it was in the median and only a foot or two on the left lane, and was not across the left lane and three or four feet in the right lane as he testified at the trial. We think this statement was properly admitted under *Musha v. United States Fidelity & Guaranty Co.* (1960), 10 Wis. (2d) 176, 102 N. W. (2d) 243, and the pain and sedation went no further than to the weight to be accorded the statement. *Mack v. Decker* (1964), 24 Wis. (2d) 219, 128 N. W. (2d) 455.

During the argument to the jury, the defendant referred to Kenneth Quinn as the representative of the plaintiff's insurance company. This was objected to as having no foundation in the evidence and counsel for the plaintiff requested the court to instruct the jury to disregard the reference. The testimony of Quinn was then read before the jury and it showed that Kenneth Quinn was handling the matter on behalf of Carriers Insurance of Des Moines, Iowa. In response to the question of which unit involved in this accident that company insured, Quinn replied, "It was the one Mr. Abbott was driving."

We think the plaintiff's objection is a matter of semantics. Perhaps Carriers Insurance did not issue the policy to the plaintiff, but it certainly is obvious that since it insured the vehicle he was driving he was afforded protection for any liability arising out of the accident which might be asserted against him. In this identification, Carriers was "his insurance company." We think the trial court was not in error in leaving the matter rest where it did after reading the testimony in the presence of the jury without an instruction.

During the trial the plaintiff cross-examined the defendant in respect to statements he made on adverse examination relative to the condition of the road between the north end of the bridge and the point of impact. The plaintiff claimed these statements were inconsistent with the defendant's testimony at the trial. While the plaintiff was reading the defendant's adverse examination to him, the trial court indicated it did not think it was necessary to reread the questions from the adverse examination which had been admitted in evidence. Plaintiff, without continuing to reread the questions, proceeded to examine the defendant concerning the inconsistent testimony. The trial court did not make any formal ruling and the plaintiff made no objection to what is now claimed to be an error.

While it is true the cross-examination of a party need not be so strictly confined to matters inquired into upon his direct examination as in the case of other witnesses, nevertheless the latitude to be permitted in cross-examination was within the control and in the discretion of the trial court. *Musha v. United States Fidelity & Guaranty Co., supra;* see also *Ward v. Thompson* (1911), 146 Wis. 376, 131 N. W. 1006; *Schultz v. Chicago & N. W. R. Co.* (1887), 67 Wis. 616, 31 N. W. 321. We find no undue restriction of the plaintiff's right to cross-examine.

We are requested to grant a new trial in the exercise of our discretionary power under sec. 251.09, Stats., because the real controversy has not been fully tried and justice has miscarried. The real controversy was fully tried and there was no miscarriage of justice on the ground the jury found neither party was negligent. Consequently, there is no basis upon which we can exercise our discretion under sec. 251.09.

*By the Court.*—Judgment affirmed.