CITY OF MILWAUKEE, Respondent, v. EISENBERG, Appellant. [Two cases.] *

*October 2—October 31, 1967.*

* Motion for rehearing denied, without costs, on December 29, 1967.

For the appellant there were briefs by *Eisenberg & Kletzke,* attorneys, and *Alan D. Eisenberg* and *Jerome F. Pogodzinski* of counsel, all of Milwaukee, and oral argument by *Mr. Pogodzinski.*

For the respondent there were briefs by *John J. Fleming,* city attorney, and *Theophilus C. Crockett,* assistant city attorney, and oral argument by *Mr. Crockett.*

BEILFUSS, J. The two alleged violations are entirely unrelated except that they were appealed to the circuit court simultaneously. They will therefore be treated separately in this opinion.

The first charge, failure to yield right-of-way, arose when the defendant was involved in a collision at the intersection of East State street and North Van Buren street in the city of Milwaukee. The movement of vehicles in this intersection was controlled by lighted traffic control signals. In the late evening and early morning hours the traffic control lights were switched from the ordinary stop and go signals to a flashing red light on East State street and a flashing yellow or amber light on Van Buren.

At about 2 a. m. on May 14, 1964, the defendant was operating his vehicle in an easterly direction on East State street. As he approached the intersection he was confronted with a flashing red light. He testified that he saw the flashing red light and stopped his vehicle and that he looked for oncoming traffic on Van Buren and saw another vehicle (driven by one Del Pozzo) approaching the intersection from the north. He concluded he had time to clear the intersection. He further testified that when he was stopped he saw the Del Pozzo vehicle 75 yards from the intersection, that it was traveling at a speed of 30 miles per hour and increased its speed to 40 miles per hour as it entered the intersection.

Del Pozzo testified both vehicles approached the intersection at about the same time; that his speed was 20 to 25 miles per hour; that he decreased it to 15 to 20 miles per hour; that he did not see the defendant stop; that he looked to the east for other traffic and that when he looked back the defendant was directly in front of him in the intersection.

The defendant contends (1) that Van Buren street was not a through street, and (2) that Del Pozzo ignored the flashing yellow signal and thereby forfeited his right-of-way.

The defendant, Eisenberg, was charged with a violation of sec. 101–30 (3) of the Milwaukee Traffic Code, which provides:

"Rule at Intersection with Through Highway.
"The operator of a vehicle shall stop as required by Section 101–71 before entering a through highway, and shall yield the right of way to other vehicles which have entered or are approaching the intersection upon the through highway."

The ordinance also provides:

"101–2. **Words and Phrases Defined.**
"In this chapter the following words and phrases have the designated meanings unless a different meaning is

expressly provided or the context clearly indicates a different meaning:

"...

"(67) 'Through highway' means every highway or portion thereof which has been declared by the state of Wisconsin or city of Milwaukee to be a through highway and at the entrances to which vehicular traffic from intersecting highways is required by traffic control signals or stop signs to stop."

Sec. 101–152 (a) of the ordinance designates State street as an arterial highway from Prospect avenue to Sixtieth street and Van Buren from East Michigan street to North Holton street which clearly encompasses the intersection of East State and North Van Buren streets.

There can be no question that Van Buren was a through street and by virtue of the flashing red light motorists on East State were required to yield the right-of-way in the intersection to motorists proceeding on Van Buren.

The first three subsections of sec. 101–30 of the Milwaukee Traffic Code are identical to the first three subsections of sec. 346.18, Stats.

Sub. (1) of the ordinance and sub. (1) of the statute provide the rules governing right-of-way at regular intersections. Sub. (1) of the statute states: "The operator of any vehicle driving at an unlawful speed forfeits any right of way which he would otherwise have under this subsection." The ordinance states: "The operator of any vehicle driving at an unlawful speed forfeits any right of way which he would otherwise have under this Section 101–30 (1)."

Before 1955, sec. 346.18 (3), then sec. 85.18 (4), Stats., incorporated the forfeiture provision of sec. 85.18 (1). Before 1955, then, the driver with the right-of-way on a through highway could forfeit that right-of-way by driving at an unlawful speed. However, sec. 85.18 (1) and (4) was changed in 1955 to read substantially the same as sec. 346.18 (1) and (3) read today. The for-

feiture provision of sub. (1) is no longer incorporated into the subsection governing rights-of-way for vehicles stopping for traffic on through highways (sub. (3) of sec. 346.18).

In 1962 this court said in *Magin v. Bemis* (1962), 17 Wis. 2d 192, at page 198, 116 N. W. 2d 129:

"It is also to be noted the change in 1955, which no longer incorporated sec. 85.18 (1), Stats., by reference in sec. 85.18 (4), removed therefrom the provision that a driver of a vehicle driving at an unlawful speed shall forfeit any right-of-way which he might otherwise have. Consequently, while unlawful speed on an arterial may be an element of negligence, *it does not work a forfeiture of the right-of-way as it would on a nonarterial highway.*" (Emphasis supplied.)

In the case at bar even if we assume Del Pozzo had been traveling at an excessive rate of speed and had been inattentive as defendant alleges, such would not have worked a forfeiture of the right-of-way. If Del Pozzo was traveling without proper caution he may have been negligent and may have violated some other traffic ordinance but he did not forfeit his right-of-way. Under the facts of this case and the ordinance in question the defendant was required to yield the right-of-way; he failed to do so and the order of the circuit court affirming a judgment of a violation of the ordinance must be affirmed.

Defendant was charged with a second violation of the Milwaukee Traffic Code. On July 11, 1965, at about 11 p. m., the defendant was traveling north on North Van Buren street. Somewhere near the middle of the 1600 block defendant pulled into a parking space on the east or right hand side of the street. Finding the space was a loading zone, defendant turned out of it and drove directly across the entire street to a parking space on the west side of the street so that his vehicle was facing the opposite direction.

The officer who issued the citation for this offense testified that he was in a squad car three or four car lengths behind the defendant at the time defendant made the turn.

The citation charged a violation of sec. 101–55 (1) (c) of the Milwaukee Traffic Code:

"101–55. **Where U-Turns are Prohibited.**
"(1) The operator of a vehicle shall not turn his vehicle so as to proceed in the opposite direction upon a highway at any of the following places:
". . .
"(c) In mid-block on any through highway in a residence district."

Defendant conceded on oral argument that Van Buren at this point is a through highway, and further conceded that the turn made by defendant was a U-turn.

The defendant's principal contention is that there was no proof the U-turn was in a residential district.

Sec. 101–2 of the Milwaukee Traffic Code provides the definition of a "business district:"

"101–2. **Words and Phrases Defined.**
"In this chapter the following words and phrases have the designated meanings unless a different meaning is expressly provided or the context clearly indicates a different meaning:
". . .
"(6) 'Business district' means the territory contiguous to a highway when 50 per cent or more of the frontage thereon for a distance of 300 feet or more is occupied by buildings in use for business." [1]

From the record it is not clear whether or not the area in which defendant was ticketed was a business or a residential area. The only testimony on the subject was that taken from the arresting officer who testified as follows:

---

[1] This provision is identical to sec. 340.01 (6), Stats.

"*Q.* And officer, in that area, within an area of three hundred feet from each side from where you observed the violation, what is in that area? *A.* There are taverns, there is about three or four taverns, there are residences, and there are one or two food markets.

"*Q.* In other words in this area there are both residences and business places? *A.* That's correct."

In any event, whether the area was a business district or a residential district is immaterial when the entire subsection (1) of the ordinance is read:

"101–55. **Where U-Turns are Prohibited.**

"(1) The operator of a vehicle shall not turn his vehicle so as to proceed in the opposite direction upon a highway at any of the following places:

"(a) At any intersection at which traffic is being controlled by traffic control signals or by a traffic officer;

"(b) In mid-block *on any street in a business district;*

"(c) In mid-block *on any through highway in a residence district.*" (Emphasis supplied.) [2]

The defendant at oral argument, through counsel, conceded that he made a U-turn on a through street. The ordinance prohibits a U-turn on a through street whether it is a business or a residential district. (In a residential district it is only on nonthrough streets that U-turns are not prohibited.) Clearly, the driving conduct of the defendant was in violation of the ordinance. The complaint alleged an illegal U-turn in violation of sec. 101–55 (1) (c) of the ordinance. Sub. (1) (c) refers to a residential district. The question to be decided is whether the finding of a violation can be upheld upon a complaint that alleges a U-turn on a through street in a residential district when the proof does not sufficiently establish the district was residential.

[2] This provision is identical to sec. 346.33 (1), Stats., except sec. 346.33 (1) contains a par. (d) not relevant here.

The allegation in the complaint that the U-turn was in a residential district was immaterial for the reason that U-turns are prohibited on through streets.

At the trial in the action the defendant's defense was based upon his contention that Van Buren was not a through street and that the turn he made was not a U-turn. Had any objection or argument been made that it was incumbent upon the city to prove the violation took place in a residential district, the complaint could have been amended upon motion of the city or upon the court's own motion.[3]

Under the defendant's present concessions he made an illegal U-turn. The penalty for making a U-turn on a through street in a business district or a residential district under the ordinance is the same. We cannot perceive how the defendant was prejudiced by the insufficiency of the proof that the location was a residential district. The judgment should be affirmed.

The defendant alleges by way of affidavit and argument that several procedural errors were committed and because of these errors the trial court lost jurisdiction. The affidavit of prejudice referred to is not a part of the record nor does the record reveal any objections as to the continuances. The affidavit of prejudice could have been filed and made a part of the record. At the trial the proceedings were reported and any objections could have been made to appear. Because of these deficiencies in the record we decline to consider the issue on this review.

*By the Court.*—Orders affirmed.

HALLOWS, J. (*dissenting*). Regardless of the reasoning of the majority, the proof in the trial court did not

[3] *See* sec. 269.44, Stats., and *Sauk County v. Schmitz* (1961), 12 Wis. 2d 382, 107 N. W. 2d 456; *Milwaukee v. Wuky* (1965), 26 Wis. 2d 555, 133 N. W. 2d 356.

establish the traffic violation charged. The issue is not one of not being prejudiced because the defendant might have been guilty under a section of the ordinance with which he was not charged but whether there was sufficient proof of a violation of the particular section of the ordinance with which he was charged. It is admitted the record is not clear that the area in which the defendant made a U-turn was a residential area. A person charged with a traffic violation must be proved guilty by clear, satisfactory and convincing evidence. *Madison v. Geier* (1965), 27 Wis. 2d 687, 135 N. W. 2d 761.