BOLLER, Administratrix of the Estate of HENRY BOLLER, Appellant, v. COFRANCES and another, Respondents.

*No. 33. Argued March 3, 1969.—Decided April 1, 1969.*
(Also reported in 166 N. W. 2d 129.)

---

[3] *Leonard v. Bottomley* (1933), 210 Wis. 411, 416, 417, 245 N. W. 849.

172

For the appellant there was a brief by *Arneson, Berg & Doyle* and *Patrick R. Doyle,* all of La Crosse, and oral argument by *Patrick R. Doyle.*

For the respondents there was a brief by *Crosby & Esch* and *Fredric W. Crosby,* all of La Crosse, and oral argument by *Fredric W. Crosby.*

HEFFERNAN, J. On this appeal the plaintiff claims that the trial court should have instructed the jury that:

"The disfavored driver in determining whether the favored driver is approaching the intersection should not be bound to anticipate that the favored driver would be approaching at an unreasonably high rate of speed in excess of the speed limit."

Whether the trial judge should have given the instruction now urged will not be decided on this appeal, for it was not suggested to the trial judge or otherwise requested at trial. The only instruction requested by the plaintiff which would have affected the jury's appraisal of plaintiff's negligence as to right-of-way in light of the defendant's speed appears in the following colloquy in chambers:

"*Mr. Arneson:* Let me make one other objection, Judge, one other request I should say, not objection. I'm going to specifically request and even though I don't have a writ-

ten request here I hope Fred will waive that for me because I will go and prepare it now, if necessary, but I want an instruction in here to the effect that a person proceeding on an arterial highway in violation of the speed regulations forfeits his right-of-way.

"*Mr. Crosby:* That of course is not the law.

"*Mr. Arneson:* No, it's not the law at present but I'm going to specifically ask for that instruction in this case. But I know you're not going to give it.

"*The Court:* I will refuse it."

As far as we can tell from the record—the plaintiff failed to submit a transcript—no other request was submitted by plaintiff's counsel and rejected by the trial judge. Certainly, the instruction now urged upon this court was never requested.

The judge, of course, correctly refused the instruction that was requested. Speed does not result in a forfeiture of right-of-way on a traffic artery, although it may well be an element of negligence. *Milwaukee v. Eisenberg* (1967), 36 Wis. 2d 378, 383, 153 N. W. 2d 519; *Magin v. Bemis* (1962), 17 Wis. 2d 192, 199, 116 N. W. 2d 129. As the cited cases point out, such has been the law since the legislative session of 1955. The instruction requested by plaintiff's attorney was palpably erroneous.

On this appeal plaintiff now concedes his error but claims that an instruction not requested should have been given. Since the request was not made, and there is no evidence in the record before us that the instruction was urged on the trial court even on motions after verdict, the plaintiff cannot now raise the trial court's failure to give it. Our review of the record would indicate that the present appeal is based not upon the judge's error at trial but rather upon the hindsight and post-trial reconsideration of the plaintiff's attorney. The words of Mr. Chief Justice CURRIE in *Withers v. Tucker* (1965), 28 Wis. 2d 82, 87, 135 N. W. 2d 776, are appropriate here:

"Appellant is precluded from raising this issue on appeal for two reasons. First, he failed to request the

giving of any additional instructions, and, second, he did not move for a new trial on the ground of error in instructions.

"In *Grinley v. Eau Galle* (1956), 274 Wis. 177, 179, 79 N. W. (2d) 797, this court has clarified the position of appellant who failed to request instruction:

" 'The record does not disclose that such instructions were requested by the plaintiffs. Therefore, error cannot now be predicated on their omission. Where instructions are incomplete, and do not cover a point that ought to be covered, this court will not reverse unless a timely request for appropriate instructions has been made to the trial court. *Madison Trust Co. v. Helleckson,* 216 Wis. 443, 456, 257 N. W. 691; *Jorgenson v. Hillestad,* 250 Wis. 592, 599, 27 N. W. (2d) 709; *Throm v. Koepke Sand & Gravel Co.* 260 Wis. 479, 483, 51 N. W. (2d) 49.'

"If an alleged error is one, such as an instruction claimed to be erroneous because incomplete, which the trial court could correct by granting a new trial, such error is not reviewable as a matter of right unless appellant has first moved for a new trial bottomed on such error in the trial court. *Wells v. Dairyland Mut. Ins. Co.* (1957), 274 Wis. 505, 518, 80 N. W. (2d) 380."

*Is a new trial warranted because of defendant's counsel's conduct in asking an allegedly improper question that indelibly prejudiced the jury despite the admonitions of the trial judge*

The plaintiff argues that a new trial should be granted because Virginia Boller was asked the following question on cross-examination by defense counsel:

"*Q.* Were you aware of the affair that your husband was having with Mrs. Case [the passenger in the car] ?

"*Mr. Arneson:* I object to this, Your Honor, as improper cross-examination. There's no foundation for any kind of questioning about that. It's beyond the scope of direct examination in every respect.

"*The Court: Beyond the scope,* Mr. Crosby. Objection sustained. [Emphasis supplied.]

"*Mr. Arneson:* And I ask that the jury be instructed to disregard it.

*"The Court:* Jury will be instructed to disregard it.
*"Mr. Crosby:* That's all."

On motions after verdict, plaintiff's counsel asked for a new trial "because of prejudicial misconduct on the part of counsel" that affected the apportionment of negligence.

To bolster this argument, plaintiff's attorney presented the trial court with an affidavit of one of the jurors who dissented in the apportionment of the negligence. He said in his affidavit:

"That during the prolonged and intense debate on the question of comparison of negligence in this case, the majority jurors constantly referred to and in his opinion were influenced by the question of Attorney Crosby put to the witness Mrs. Boller to the effect that: 'Was she aware that her husband was having a clandestine affair with Mrs. Case?'

"That in spite of the judge's ruling that such question was improper and should be disregarded, the majority jurors seized upon such improper question by counsel as establishing such a relationship to prejudice of Mrs. Boller, the plaintiff, and that in his opinion such prejudice materially affected the determination of such jurors on the question of apportionment of negligence.

"That in his opinion the majority jurors totally disregarded the Trial Judge's instruction to disregard such question and its implications to the prejudice of the plaintiff."

We have made it clear that we would not countenance the consideration of affidavits or testimony by a juror that tends to impeach a jury verdict. *Kink v. Combs* (1965), 28 Wis. 2d 65, 135 N. W. 2d 789; *Ford Motor Credit Co. v. Amodt* (1966), 29 Wis. 2d 441, 139 N. W. 2d 6. These cases discuss the reason for the rule and point out that the use of such evidence would seriously undermine the efficacy of our system of jury verdicts. In *Ford* we pointed out, at pages 450, 451, that although "jurors may sometimes be required to confirm or deny

someone else's attack upon their verdict, . . . they themselves may never embark on a course which will impeach their verdict."

Our subsequent opinion in *Miller v. Illinois Central R. R.* (1967), 36 Wis. 2d 184, 152 N. W. 2d 898, reemphasized and clarified the broad prohibition against the use of jury-initiated evidence for the purpose of impeachment of verdicts. In view of our repeated admonitions against securing or attempting to use such evidence, which tends to undermine our jury system, we consider the action of plaintiff's attorney to be of dubious propriety.

However, we need not consider the affidavit of Juror Jones to conclude that the question did not result in a prejudiced verdict. Virginia Boller was asked whether she was aware of her husband's affair with Mrs. Case. If the jury had by this question been influenced to believe that the relationship between Henry and Virginia Boller was strained and somewhat less than one of complete mutual trust and affection, it would be reasonable to assume that such jury reaction would be reflected in the jury's answer to the question, "What sum of money will reasonably compensate the plaintiff, Virginia Boller, for the damage she has sustained for loss of society and companionship?" The jury, however, awarded her the sum of $5,000—$2,000 in excess of the limit allowed by sec. 895.04, Stats. If prejudice were at work in connection with the disputed question, we are of the opinion that its effects would be apparent in the jury's award of damages for loss of society and companionship. It is not apparent.

We fail to see by what logic the plaintiff would have us relate the apportionment of negligence to the question of Henry Boller's alleged "affair." After all, she, Virginia Boller, not he, was the plaintiff, and it could just as reasonably be argued that the jury concluded that it should give special consideration to a wife who was

wronged by her husband and reward her with a generous verdict. It is apparent that either conclusion is purely speculative and cannot be used as a basis for setting aside the jury's apportionment of negligence. We said in *Barber v. Oshkosh* (1967), 35 Wis. 2d 751, 754, 151 N. W. 2d 739:

". . . ordinarily apportionment of negligence is for the jury. The general rule is that a jury's findings as to negligence apportionment will be sustained if there is any credible evidence that, under any reasonable view, supports such findings."

There is ample evidence of record to support the jury's findings.

We should also point out that, had plaintiff's counsel any reason to apprehend that the question posed was highly prejudicial and would infect the jury verdict despite the judge's admonitions that the jury disregard it, he could have moved for a mistrial. It is the allegedly improper conduct of the defendant's counsel of which plaintiff complains. As we pointed out in *Kink v. Combs, supra,* page 72:

". . . we have held that counsel claiming prejudice by reason of counsel's misconduct must promptly make proper objections to the court [citing cases] . . . 'counsel having remained silent when he could or should have spoken on such a matter . . . ought not to be permitted after verdict against him to try again.'
"In the instant case the defendant, if he felt aggrieved, should have moved for mistrial . . . . [citing cases]
"Failure to make a timely motion can only be construed as an election to rely on the possibility of a favorable jury verdict."

In the instant case plaintiff's counsel, although he objected to the question, was at the time satisfied with the judge's order to strike the question and with his direction to the jury to disregard it. It was only after the disappointing verdict that the plaintiff, who could well

have been benefited by the question, claimed it to be prejudicial. His claim is not only without merit, but it is also untimely.

*Was it error to exclude the question in regard to Henry Boller's affair with Mrs. Case*

While the trial judge excluded the question, "Were you [Virginia Boller] aware of the affair that your husband was having with Mrs. Case?"—and the plaintiff assumes that such ruling was correct—the defendant on this appeal stoutly contends that the question was proper and Virginia Boller's answer should have been admitted into evidence. Defendant points out in his brief that the plaintiff on direct examination testified, "that she and her husband had a close relationship and were very happily married."

When defendant's counsel asked his question, it was objected to and that objection was sustained on the grounds that it was *beyond the scope of the direct* examination. We do not agree with the ruling of the trial judge. One of the major issues to be resolved by the jury was the evaluation, to the extent possible, of the loss Virginia Boller sustained by losing the society and companionship of Henry Boller. Certainly, the existence of an "affair" with another woman and Virginia Boller's knowledge of it were probative of the value to be placed upon Virginia Boller's loss. Moreover, the question was directly related to, and in impeachment of, her testimony on direct examination. We are satisfied that the question was relevant to the questions posed on direct examination and was within its scope. Of course, despite its probativeness, it is within the discretion of the trial judge to exclude evidence if its probativeness is offset by possible jury prejudice. *State v. Hutnik* (1968), 39 Wis. 2d 754, 763, 764, 159 N. W. 2d 733; *Price v. State* (1967), 37 Wis. 2d 117, 133, 154 N. W. 2d 222; *State v. Smith* (1967), 36 Wis. 2d 584, 153 N. W. 2d 538; *Whitty v.*

*State* (1967), 34 Wis. 2d 278, 149 N. W. 2d 557. Here, however, such discretion was not in fact exercised, and in view of the state of the record, such evidence should not have been excluded. While we find the disputed question to be within the scope of the direct examination, we have grave doubts that such rule of exclusion should be followed, particularly when the witness on the stand is a party and subject to be called, in a civil case at least, by the opponent. *Abbott v. Truck Ins. Exchange Co.* (1967), 33 Wis. 2d 671, 681, 148 N. W. 2d 116; *Musha v. United States Fidelity & Guaranty Co.* (1960), 10 Wis. 2d 176, 102 N. W. 2d 243; *Ward v. Thompson* (1911), 146 Wis. 376, 131 N. W. 1006; *Schultz v. Chicago & N. W. R. R.* (1887), 67 Wis. 616, 31 N. W. 321. The rule against questioning any witness "beyond the scope of direct examination" has no intrinsic merit and does not demonstrably assist in the search for the truth. Rather, by encouraging pettifogging objections that go to form and not substance, the rule is likely to be disruptive of trial procedure and results in appeals that basically have no merit.

The only claimed virtue for the rule is that it ensures the orderly presentation of evidence, *i.e.*, that a plaintiff's witness should not be expected to help make the defendant's case on cross-examination. But why shouldn't he? If the question is relevant and is otherwise admissible and the information solicited is within the knowledge of the witness, it should be within the sound discretion of the trial judge to determine whether or not questions on cross-examination prevent an orderly and cogent presentation of the evidence. They well might, and usually would, contribute to the intelligent search for the truth.[1]

---

[1] In the recent case of *Neider v. Spoehr* (March 4, 1969), 41 Wis. 2d 610, 618, 165 N. W. 2d 171, Mr. Justice BEILFUSS, speaking for the court, pointed out that it is within the discretion of the trial judge to control cross-examination:

". . . the right of . . . cross-examination . . . can be controlled by the trial court so that the trial proceeds in an orderly and fair

This test, which leaves the admission or exclusion to the discretion of the trial judge, is infinitely preferable to the artificial and meaningless rule that excludes all evidence whether it should then logically come into the record or not, simply because it is "beyond the scope." The Model Code of Evidence recommends the following rule to supplant the present practice:

"**Rule 105. Control of Judge over Presentation of Evidence.** The judge controls the conduct of the trial to the end that the evidence shall be presented honestly, expeditiously and in such form as to be readily understood, and in his discretion determines, among other things,

. . .

"(h) to what extent and in what circumstances a party cross-examining a witness may be forbidden to examine him concerning material matters not inquired about on a previous examination by the judge or by an adverse party."

Wigmore points out that the present rule, as practiced in Wisconsin, is a recent one, and that the historical or orthodox rule permitted:

"'. . . the opposite party . . . not only [to] cross-examine him in relation to the point which he was called to prove, but he may examine him as to any matter embraced in the issue. He may establish his defence by him without calling any other witnesses. If he is a competent witness to the jury for any purpose, he is so for all purposes.'" 6 Wigmore, *Evidence* (3d ed.), p. 532, sec. 1885, quoting SUTHERLAND, J., *Fulton Bank v. Stafford* (1829), 2 Wend. 483, 485.

---

manner. The exercise of discretion by the trial court to deny or restrict cross-examination must be dependent upon the circumstances of the trial. This court will not reverse unless it clearly appears that the trial court abused its discretion and that the error affected a substantial right of the complaining party and probably affected the result of the trial."

This statement is valid under the rule we herein adopt and expresses the rationale of the Model Code of Evidence that discretion in this respect is properly vested in the trial court.

Wigmore in that volume, sec. 1885 ff., discusses in detail the shortcomings of the present rule. In his students' textbook, Wigmore on *Evidence*, he summarizes the effect of the present rule:

"Cross examination is the greatest engine for getting at the truth; . . . and a rule which needlessly hampers its exercise as this one does cannot be a sound one."

McCormick, in his treatise on *Evidence* (hornbook series), p. 51, sec. 27, points out that, when all relevant factors are considered, "the balance [is] overwhelmingly in favor of the wide-open rule." He points out that:

"The restrictive practice in all its forms . . . is productive . . . of continual bickering over the choice of the numerous variations of the 'scope of the direct' criterion, and of their application to particular cross-questions. These controversies are often reventilated on appeal, and reversals for error in their determination are frequent. Observance of these vague and ambiguous restrictions is a matter of constant and hampering concern to the cross-examiner. If these efforts, delays and misprisions were the necessary incidents to the guarding of substantive rights or the fundamentals of fair trial, they might be worth the cost. As the price of the choice of an obviously debatable regulation of the order of evidence, the sacrifice seems misguided."

McCormick also emphasizes the deleterious effect of the present rule in the prosecution of criminals:

". . . the accused may limit his direct examination to some single aspect of the case, such as age, sanity or alibi, and then invoke the court's ruling that the cross-examination be limited to the matter thus opened. Surely the according of a privilege to the accused to select out a favorable fact and testify to that alone, and thus get credit for testifying but escape a searching inquiry on the whole charge, is a travesty on criminal administration. . ."

"In jurisdictions following the wide-open practice there is of course no obstacle to cross-examining the accused upon any matters relevant to any issue in the entire case." Pp. 49, 50, sec. 26.

While the Wisconsin cases appear to allow greater latitude in the cross-examination of a criminal defendant, they appear to permit examination of all facets of an alleged crime only when the defendant has opened the door on direct by testifying on the merits of the case. *Sprague v. State* (1925), 188 Wis. 432, 206 N. W. 69.

We are satisfied that the wide-open rule should be adopted by this court. The appeal herein is founded upon the exclusion from the record of relevant evidence on the grounds that it elicited information not covered by, or within, the scope of the direct evidence. The evidence, in reason, ought not to have been excluded. Because the plaintiff, by invoking the spurious "beyond the scope" rule, contends that the jury made use of improper and inadmissible evidence, he has brought a patently specious appeal. The exclusion of the evidence on the basis of the restrictive rule is founded in neither reason nor the interest of justice. It is productive of confusion and super-technical appeals similar to the one brought in this instance.

Had the rule been the one permitting wide-open cross-examination, the answer to the question would have been clearly admissible and the subsequent bickering would have been avoided. Of course, as stated above, otherwise admissible evidence can still be excluded in the discretion of the trial judge if its harmful effects on the legal process outweigh its probative value. In such event, *e.g.*, had it been clearly admissible under the wide-open rule, the question would have hinged upon the question of abuse of discretion by the trial judge and not upon a mechanistic rule of evidence.

We conclude that in the instant case the plaintiff failed to preserve his right to review the judge's instructions to the jury. We also conclude that the disputed question properly should have been allowed as eliciting evidence relevant to the issue or in impeachment. On both scores the answer would be admissible even under the restrictive rule heretofore in use. It would without a doubt have

been a proper question under the wide-open rule which we herein adopt. Under this rule the trial judge shall exercise discretion to assure an orderly and intelligible presentation of the facts without the requirement of slavish compliance with the "beyond the scope" rule.

We conclude that the plaintiff was not prejudiced by the proceedings and the apportionment of negligence is supported by substantial evidence. The interest of justice would not be secured by a new trial.

*By the Court.*—Judgment affirmed.